[No. A062686. First Dist., Div. Three. Mar. 10, 1994.]

RN REVIEW FOR NURSES, INC., Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Buell & Berner and Curtis W. Berner for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Charlton G. Holland, Assistant Attorney General, Stephanie Wald and Angela Botelho, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

WHITE, P. J.—RN Review for Nurses, Inc. (RN) appeals from a judgment in favor of the State of California, Council for Private Postsecondary and Vocational Education (Council), State Board of Control (Board), and various named members of the Council and Board holding that the Private Postsecondary and Vocational Education Reform Act of 1989 (Act) (Ed. Code,[1] § 94300 et seq.) requires RN to pay an annual renewal fee for each of the sites at which it offers its educational services. For the reasons stated below, we affirm the judgment.

___

[1]All statutory references are to the Education Code.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts in this action are undisputed. RN is a corporation engaged in the business of providing review courses for recent graduates of nursing schools who are preparing for state certification as nurses. RN offers four-day courses approximately twice a year at various locations throughout the state. The courses are conducted at hotel meeting rooms, college auditoriums or hospital conference rooms.

Council is entrusted with the responsibility for administering and enforcing the provisions of the Act. Council members are appointed representatives from various sectors of the educational community and the general public. (§ 94304.)

Prior to 1991, the annual renewal fee for an institution such as RN was $225. (Former § 94331, subd. (d)(2)(A).) Council interpreted this code section as requiring an annual renewal fee for each site or location at which RN offered its courses. As the fee was relatively small, RN did not challenge Council's interpretation and merely complied by paying an annual renewal fee for each location at which it offered its courses.

In 1989, the Legislature passed the Act, which was signed into law and became effective January 1, 1991. (Stats. 1989, ch. 1307, §§ 4-6, pp. 5186-5230.) The Act increased the annual renewal fee for nondegree granting institutions to a range of $600 to $1,200, depending on size. (§ 94331.5, subd. (b)(2).)

In 1991, RN did not pay an annual fee for each location at which it conducted its review courses. Instead, it paid a single $1,200 annual fee. On July 12, 1991, Council sent letters to RN demanding payment of the annual fee under section 94331.5, subdivision (b)(2) for five additional locations[2] at which RN conducted review courses. Counsel for RN responded that although each separate location at which review courses were given might constitute a branch or satellite campus for which approval is required, RN was only required to pay a single annual fee.

When the parties were unable to resolve the dispute, RN filed a complaint for declaratory and injunctive relief as well as a petition for writ of mandate. After the trial court found a separate fee may be charged for each location, this appeal followed.

---

[2] The five additional course sites were located in San Francisco, La Jolla, Loma Linda, Long Beach and Los Angeles.

## Discussion

The rules of statutory construction are settled. "On the one hand, 'when statutory language is clear and unambiguous, "there is no need for construction, and courts should not indulge in it" ' [Citations.] . . . [¶] On the other hand, '[t]he meaning of the words of a statute or, to use the alternative approach favored by many courts, the intent of the Legislature, can only be determined with reference to the context in which the words are used; that is, with reference to such purpose as may be discerned from examining the entire enactment of which the words are part . . . . Thus, "in analyzing the legislative usage of certain words, ' "the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration . . . ." ' [Citations omitted.]" . . . The courts resist blind obedience to the putative "plain meaning" of a statutory phrase where literal interpretation would defeat the Legislature's central objective.' [Citation.] . . . 'The words of a statute will not be literally construed if this would cause an absurd result, or if it would fail to give effect to the manifest purposes of the statute in light of its legislative history.' [Citations.]" (*Farnow* v. *Superior Court* (1990) 226 Cal.App.3d 481, 485-486 [276 Cal.Rptr. 275]; see also *Thornton* v. *Carlson* (1992) 4 Cal.App.4th 1249, 1255-1256 [6 Cal.Rptr.2d 375].)

The statute at issue in this case, section 94331.5, subdivision (b)(2), provides in relevant part: "Until the council establishes the fee schedule required by Section 94331, the following fee schedule shall govern the fees to be paid by private institutions operating under this chapter: [¶] . . . [¶] For an approval to . . . offer courses pursuant to Section 94311: [¶] . . . [¶] One thousand two hundred dollars ($1,200) for an institution's annual fee if the institution does not participate in publicly funded student financial assistance programs and enrolls more than 150 students each year. Six hundred dollars ($600) for an institution's annual fee if the institution does not participate in publicly funded student financial assistance programs and enrolls 150 or fewer students each year. . . ." The specific dispute at bench is what constitutes an institution which must pay a fee within the meaning of the statute.

Section 94331.5 must be read in the context of the entire statutory scheme. Section 94301 sets forth the legislative intent in enacting the Act. That section states in pertinent part: "It is further the intent of the Legislature to provide for the protection, education, and welfare of citizens of California, its postsecondary educational institutions, and its students by providing for all of the following: [¶] . . . [¶] (e) Recognizing the importance of providing adequate funding through application and renewal fees . . . to support the state's activities in implementing this chapter."

Thereafter, section 94331 establishes a fee-generated fund for the overall administration of the Act's provisions. That section states in part: "For the approval of private institutions operating under this chapter, the council shall charge an amount not exceeding the actual costs of approving the private institutions. . . . The fee schedule shall provide adequate resources for the council to implement this chapter effectively. It is the intent of the Legislature that the council shall adopt a fee schedule that reflects the size of the institution, with institutions enrolling a larger number of students being required to pay a larger annual fee than those with smaller student enrollments."

Given this legislative intent we must determine the meaning of the term "institution" in section 94331.5. Former section 94302, subdivision (p), which was in effect from January 1, 1991, until August 14, 1992, stated: " 'Institution' means any private postsecondary educational institution." (Stats. 1990, ch. 1479, § 2, p. 5763.)

Former section 94302, subdivision (t) provided in relevant part: " 'Private postsecondary educational institution' means any person, firm, association, partnership, or corporation doing business in California by . . . offering to the public for a tuition, fee, or other charge, (1) instructional or educational services . . ." (Stats. 1990, ch. 1479, § 2, p. 5764.) Since RN is a corporation, it would appear to fall within the former statutory definitions for institution.

However, in 1992, the Legislature passed emergency legislation, effective August 14, 1992, which amended and relettered subdivisions of section 94302. (See Stats. 1992, ch. 482, § 5, pp. 1569-1571.) Section 94302, subdivision (r) currently provides: " 'Institution' means any private postsecondary educational institution. An 'institution' includes its branch and satellite campuses, unless otherwise provided by the council."

Section 94302, subdivision (h) defines the term "branch" as follows: " 'Branch' means a site located within 50 miles of the main location. Only educational services that are approved at the main location shall be offered at the branch. For the purpose of conducting onsite inspections and evaluations, hotel conference rooms, faculty offices, and homes are not considered branches." Thereafter, section 94302, subdivision (x) states: " 'Satellite' means an auxiliary classroom located within 50 miles of a branch or the main location. A satellite is a temporary facility. . . . [¶] . . . [¶] For the purpose of conducting onsite inspections and evaluations, hotel conference rooms, faculty offices, and homes are not considered satellites." (Stats. 1992,

ch. 482, § 5, p. 1569.) Thus, the current statutes dispel the notion that the various sites at which RN conducts courses are either branches or satellites. First, they are not located within 50 miles of each other. (See *ante*, fn. 2.) Second, even if the course sites were within 50 miles of RN's main location, the course sites include such places as hotel conference rooms, which, for the purposes of on-site inspections and evaluations, are not considered branches or satellites.

In addition, the 1992 legislation relettered and amended former section 94302, subdivision (t). Section 94302, subdivision (w) currently states: " 'Private postsecondary educational institution' means any person doing business in California that offers to provide or provides, for a tuition, fee, or other charge, any instruction, training, or education primarily to people who have completed or terminated their secondary education. . . ." (Stats. 1992, ch. 482, § 5, p. 1570.)

In construing the 1992 amendments we apply standard rules of statutory interpretation. "An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute. . . . [¶] If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change." (1A Singer, Sutherland Statutory Construction (5th ed. 1993) § 22.31, p. 279, fns. omitted.)

Moreover, section 94311 states in pertinent part: "No private postsecondary educational institution . . . may offer education services or an education program, unless the institution or the branch or satellite campus at which these programs are offered, has been approved by the council as meeting the requirements of this section . . . . [¶] (a) If an institution is operating under the council's prior approval and the institution has applied for approval to operate for itself or a branch or satellite campus that is operating, the council shall not grant approval to operate until it has conducted a qualitative review and assessment of the operations of the institution in California, . . . [¶] . . . [¶] (b) . . . [P]rior to granting any approval, a representative of the council shall personally inspect the institution and verify the institution's compliance with the standards prescribed by this chapter. The onsite inspection shall include an inspection of the institution's facilities and records, interviews of administrators, faculty, and students, and an observation of class instruction, as determined to be appropriate by the council. If the

application is for approval to operate a branch or satellite campus that is in operation, the council shall inspect that branch or satellite campus as provided herein and may also inspect the institution operating the branch or satellite campus. . . ."

Thereafter, section 94316.8 provides: "No institution shall establish a branch or satellite campus unless the branch or satellite campus has been first approved by the superintendent as complying with the minimum criteria prescribed in Section 94311, . . ." Both sections 94311 and 94316.8 imply that approval to operate any institution and/or branch or satellite requires site-specific inspections. Since separate approvals are required for each location, it is reasonable that the Legislature intended to require separate fees under section 94331.5.

As Judge Pollak stated in his statement of decision, "Section 94331 authorizes the council to charge a fee '[f]or the approval of private institutions operating under this chapter'; while the syntax is not entirely consistent, this appears to mean approval 'to operate' as defined in former section 94302(v) (now section 94302([aa]),[3] which definition is tied to the facility or location at which educational services are offered. More importantly, both section 94311 and 94331.5(b) do tie the imposition of the fee to the 'approval,' and sections 94331 and 94316.8 do indicate that a separate approval is required for each branch or location. Admittedly, additional confusion is created by the definitional changes in former section 94302(h) (now section 94302(h) and (x)), but since no changes were made in sections 94311 and 94316.8, it appears that separate approvals remain required for each location, and therefore that a separate fee may be charged for each of these approvals. This conclusion is buttressed by the contrast between the statutory language in the provisions relating to degree-granting institutions covered by section 94310 (see e.g., section 94310(d)(1)) and to non-degree granting institutions covered by section 94311, such as plaintiff (compare, e.g., section 94311(b), (d)(2))."

RN argues that Judge Pollak's interpretation of the statutory provisions results in an arbitrary imposition of fees that has no relationship to the actual costs of approving private institutions as mandated by section 94331. However, Judge Pollak's response in the trial court was appropriate: "It [is] clear under the statute that the process of issuing approval is not supposed to be a

---

[3]Former subdivision (v) is identical to current subdivision (aa). Both subdivisions provide as follows: " 'To operate' an educational institution, or like term, means to establish, keep, or maintain any facility or *location* in this state where, or from or through which, educational services are offered or educational degrees or diplomas are offered or granted." (§ 94302, subd. (aa), italics supplied.)

money-making process . . . and, presumably, the total fees which they charge should not exceed the total costs of administering the program to issue these approvals. [¶] But beyond that, does the statute really require them to fine-tune it in any particular manner? [¶] It may well be that some approvals which they issue they will spend more than the actual fee that they charge. In other cases they may incur costs less than the actual fees that they charge. [¶] But as long as they use some reasonable method of estimating the costs of administering this process and produce fees which do not exceed what it costs to administer the entire program, isn't that permissible under the statute?"

RN also poses a hypothetical situation where one site which is available for a review course in January is unavailable for the same course in June. Would the statute require a second $1,200 fee for the course in June? The response is found in section 94331.5, subdivision (b)(4) which requires a $250 fee for an institution's change of location.

DISPOSITION

The judgment is affirmed.

Merrill, J., and Chin, J., concurred.