[No. D018801. Fourth Dist., Div. One. Dec. 2, 1994.]

LARRY IGOR BORDEN, Plaintiff and Respondent, v.
DIVISION OF MEDICAL QUALITY, Defendant and Appellant.

COUNSEL

Daniel E. Lungren, Attorney General, Alvin J. Korobkin, Assistant Attorney General, Billie Jan Goldstein and Anne L. Mendoza, Deputy Attorneys General, for Defendant and Appellant.

Richard A. Barr, Timothy Lee Guhin and Paul Douglas McClary, Jr., for Plaintiff and Respondent.

OPINION

HUFFMAN, J.—Larry Igor Borden, M.D., filed a petition for writ of administrative mandate (Code Civ. Proc., § 1094.5) to review a decision of the Division of Medical Quality (the Division) of the Medical Board of California (the Board) revoking Borden's license to practice medicine. The trial court granted the petition in part on the basis that 1990 amendments to Business and Professions Code[1] section 2229 cannot be applied retroactively. The Board appeals. We reverse with directions to enter a new judgment denying the petition.

FACTS

On February 9, 1987, the Board filed an accusation alleging that Borden, an anesthesiologist, committed acts of gross negligence, repeated negligent

---

[1] All subsequent statutory references are to the Business and Professions Code unless otherwise specified.

acts and acts of incompetence (§ 2234, subds. (b), (c) & (d)), and practiced medicine while intoxicated (§ 2240) in his treatment of Keona Murphy, a six-week-old girl who died following surgery in 1984. In a supplemental accusation filed August 31, 1990, the Board added allegations that Borden committed the same violations except for practicing while intoxicated in his treatment of Harold Nordquist, a 68-year-old man who died following surgery in 1989.

The case was tried before an administrative law judge in a 10-day hearing in April and May 1991. On June 10, 1991, the administrative law judge issued his proposed decision, finding cause for disciplinary action existed against Borden with respect to patient Nordquist, but not with respect to patient Murphy. The proposed order of the administrative law judge revoked Borden's license, but stayed the revocation and placed Borden's license on probation for a period of 10 years under various terms and conditions.[2]

The Division rejected the administrative law judge's proposed decision and decided the case itself on the record, including the transcript of the hearing. On February 11, 1992, the Division issued its decision, finding cause for disciplinary action existed against Borden with respect to patient Murphy (§ 2234, subds. (b) & (d)), as well as patient Nordquist (§ 2234, subds. (b), (c) & (d)). The Division ordered the same discipline as had been proposed by the administrative law judge.

The Board filed a petition for reconsideration, and on July 8, 1992, the Division issued its "Decision After Reconsideration," which adopted the prior decision with two changes. The first change was the addition of the following paragraph:

"VIII

"The penalty imposed by the Division in the prior decision is not consistent with the recent legislative mandate raising protection of the public above all other concerns, including rehabilitation of the licensee. The probationary penalty previously ordered does not adequately protect the public from respondent's deficiencies. Two patients who would otherwise be alive today are dead because of respondent's gross negligence and incompetence. Only an outright revocation of respondent's license will adequately protect the public."

---

[2]Among other things, the terms and conditions included: Borden taking and passing an oral or written examination in anesthesiology and, once the examination was passed, Borden submitting to the Division a plan in which his practice would be monitored by another physician in his field of practice who would make periodic reports to the Division.

The second change was to strike the penalty provisions of the prior decision and enter a new order, namely revocation of Borden's license, effective August 7, 1992.[3]

On August 5, 1992, Borden filed a petition for writ of administrative mandate. On September 3, 1992, the trial court granted Borden's application for a stay of the Board's revocation of his license, but placed certain restrictions on his practice of medicine.[4]

On February 23, 1993, the trial court denied the writ in part, finding the evidence taken at the administrative hearing supported the determinations that cause for discipline existed with respect to Borden's treatment of both patients. However, the trial court also issued an alternative writ of administrative mandate, directing the Board to reconsider the penalty to be imposed on Borden. The trial court found the penalty of revocation in the "Decision After Reconsideration" dated July 8, 1992, "was the consequence of the improper retroactive application" of a 1990 amendment to section 2229. The trial court also ordered its September 3, 1992 order, which stayed Borden's license revocation while imposing restrictions on his practice of medicine, to be in full force and effect until such time as the Division issued a new decision in compliance with the alternative writ. The Board timely appealed.[5]

## DISCUSSION

Prior to January 1, 1991, section 2229 provided: "In exercising its disciplinary authority [the Division] or a medical quality review committee or panel thereof shall, wherever possible, take such action as is calculated to aid in the rehabilitation of the licensee, or where, due to lack of continuing education or other reasons, restriction on scope of practice is indicated, to order such restrictions as are indicated by the evidence. It is the intent of the Legislature that the division and committees shall seek out those licensees who have demonstrated deficiencies in competency and then take such actions as are indicated, with priority given to those measures, including

---

[3]Contrary to Borden's contention in his respondent's brief, it appears that the petition for reconsideration was timely under Government Code section 11521, setting a 30-day time limit for such a petition, in light of the order staying the effective date of the decision in this matter, of which we have taken judicial notice.

[4]The stay order placed the following restrictions on Borden's practice of medicine: "1. [Borden] is prohibited from practicing medicine in a surgical setting; 2. [Borden] is prohibited from administering any type of anesthesia; 3. [Borden] is prohibited from administering any narcotic or analgesic; and 4. [Borden] must secure the co-signature of a physician and surgeon licensed in this state on any and all prescriptions issued by [Borden] for any narcotic or analgesic."

[5]A cross-appeal by Borden was dismissed after he did not timely deposit costs for preparation of the record.

further education, restrictions from practice or other means that will remove such deficiencies." (Stats. 1980, ch. 1313, § 2, p. 4473.) In 1990, effective January 1, 1991, the Legislature amended section 2229 to read as follows:

"(a) *Protection of the public shall be the highest priority for [the Division], a medical quality review committee, the California Board of Podiatric Medicine, and administrative law judges in exercising its disciplinary authority.*

"(b) In exercising its disciplinary authority [the Division], Board of Podiatric Medicine, a medical quality review committee or panel thereof, or an administrative law judge, shall, wherever possible, take action as is calculated to aid in the rehabilitation of the licensee, or where, due to lack of continuing education or other reasons, restriction on scope of practice is indicated, to order restrictions as are indicated by the evidence.

"(c) It is the intent of the Legislature that the division, the enforcement program, and committees shall seek out those licensees who have demonstrated deficiencies in competency and then take those actions as are indicated, with priority given to those measures, including further education, restrictions from practice or other means[,] that will remove those deficiencies. *Where rehabilitation and protection are inconsistent, protection shall be paramount.*" (Stats. 1990, ch. 1597, § 14, italics added.)[6]

The interpretation of these statutory provisions is a question of law. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) " 'When the facts do not conflict and the issues involve proper application of a statute or administrative regulation, a reviewing court is not bound by the trial court's determination. [Citation.]' [Citation.]" (*Webb* v. *Miller* (1986) 187 Cal.App.3d 619, 625 [232 Cal.Rptr. 50].)

I

*Retroactivity Rules*

Here, on reconsideration, the Board decided that under the recent amendments to section 2229, the proper discipline to be imposed was revocation of Borden's license. The trial court ruled that this penalty was the consequence of an improper retroactive application of the amendments. ■ "A statute is retroactive if it substantially changes the legal effect of past events.

---

[6]In 1993, the Legislature further amended section 2229 (Stats. 1993, ch. 1267, § 24) with nonsubstantive changes that need not concern us.

[Citations.] A statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment. [Citations.]" (*Kizer* v. *Hanna* (1989) 48 Cal.3d 1, 7-8 [255 Cal.Rptr. 412, 767 P.2d 679].) The rule is also stated: "A retroactive statute is one which ' "affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute." ' [Citation.]" (*Russell* v. *Superior Court* (1986) 185 Cal.App.3d 810, 814 [230 Cal.Rptr. 102], quoting *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 391 [182 P.2d 159].) The theory against retroactive application of a statute is that the parties affected have no notice of the new law affecting past conduct. (*Russell* v. *Superior Court, supra,* 185 Cal.App.3d at p. 814.)

It is noted that these amendments were effective January 1, 1991, before Borden's hearing commenced, but after the events which gave rise to the hearing (the 1984 and 1989 deaths of patients). ■ In deciding whether a statute may be given retroactive application, it is not significant whether the statute is labeled substantive or procedural in nature. "Both types of statutes may affect past transactions and be governed by the presumption against retroactivity. The only exception which we can discern from the cases is a subcategory of procedural statutes which can have no effect on substantive rights or liabilities, but which affect only modes of procedure to be followed in future proceedings." (*Russell* v. *Superior Court, supra,* 185 Cal.App.3d at p. 816.) Such modes of procedure will impact only on future events, such as trial procedure or rules of evidence in future trials. (*Ibid.*) "If substantial changes are made, even in a statute which might ordinarily be classified as procedural, the operation on existing rights would be retroactive because the legal effects of past events would be changed, and the statute will be construed to operate only in futuro unless the legislative intent to the contrary clearly appears. [Citations.]" (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d at p. 394; see *In re Cindy B.* (1987) 192 Cal.App.3d 771, 778-779 [237 Cal.Rptr. 677].)

## II

### Contentions on Appeal

■ Based on these rules, our inquiry should be whether the amendments to section 2229 changed the legal effects of past events, and constitute "substantial changes" in the law applicable to Borden's case. (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d at p. 394.) Borden has suggested several ways in which the change in law could have affected his conduct. Because he has always denied that his treatment of the two patients was grossly negligent, he does not apparently contend that he conducted his

medical practice in reliance on the former version of section 2229, and its emphasis on rehabilitation of the physician. His arguments, instead, are directed toward the time of the hearing, as he contends the new version of section 2229 was not introduced until the end of the proceedings, and thus constituted surprise and a due process deprivation due to lack of notice that the new statute would be applied to his case. He also suggests that had he known the new law would be brought into his hearing, he might have entered into a plea bargain of some kind with that new law in mind. He thus contends these amendments constituted a substantive change in the prior law, as the bill of which they were a part, the Medical Judicial Procedure Improvement Act (Stats. 1990, ch. 1597, §§ 1, 39) constituted an extensive overhaul and restructuring of the medical disciplinary system. In particular, he points to section 1 of the bill, an uncodified statement of legislative intent, providing as follows:

"The 1989-90 Regular Session of the Legislature declares that the physician discipline system administered by the board's Division of Medical Quality is inadequate to protect the health, safety, and welfare of the people of California against incompetent or impaired physicians.

"It is, therefore, the intent of the Legislature to restructure the physician discipline system of the Medical Board of California in order to give it authority to act quickly in extreme cases to impose interim protective measures or final sanctions short of license revocation or suspension; more information from a variety of enhanced reporting sources and increased public outreach; procedures which afford a fair review and hearing by an experienced administrative law judge without excessive delay; procedures to ensure a high quality hearing; and enhanced resources to finance such a system in the interests of protecting the people of California. It is therefore the intent of the Legislature to improve the discipline system of licensed physicians and allied health professionals by creating a more expeditious and efficient adjudicatory system and providing it the adequate resources for its performance. It is also the intent of the Legislature that the pay scales for investigators of the Medical Board of California be equivalent to the pay scales for special investigative agents of the Department of Justice, in order to attract and retain experienced investigators." (Stats. 1990, ch. 1597, § 1.)

Borden also argues that the mere fact that the Board reconsidered the penalty to be imposed in his case, based on the amendments, shows that a substantive change in the law took place.

III

*Exception to Retroactivity: Clarification of the Law*

To evaluate these arguments, we must analyze the extent to which the amendments to section 2229 actually changed existing law. There is a well-established exception to the general rule that statutes are not construed to apply retroactively, i.e., when the legislation merely clarifies existing law. (*Bowen* v. *Board of Retirement* (1986) 42 Cal.3d 572, 575, fn. 3 [229 Cal.Rptr. 814, 724 P.2d 500]; *Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 828-829, fn. 8 [114 Cal.Rptr. 589, 523 P.2d 629].)

We first take note that there is no express declaration in the legislation as to whether the Legislature intended the amendments to operate retroactively. ■ In the absence of such an express declaration of legislative intent for retroactive application, a court may look to a variety of other factors to determine such legislative intent, such as the context of the legislation, its objective, the evils sought to be remedied, the history of the times and similar legislation, public policy, and/or contemporaneous statutory construction. (*Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371].)[7] ■ We need not discuss these secondary indicators, however, as we conclude that the amendments to section 2229 are merely a clarification, as opposed to a substantive change, in the medical disciplinary system, based on the historical background of the public policy behind the Medical Practice Act (§ 2000 et seq.), of which section 2229 is a part. To reiterate the changes made by the amendments: They first state a public policy placing public protection at the top of the Board's priorities in disciplinary matters. They also provide guidance to the Board in exercising its discretion in decisionmaking, by stating: "Where rehabilitation and protection are inconsistent, protection shall be paramount." (§ 2229, subd. (c).) We find such statements to be a clarification of existing law.

A

*Public Protection*

Public protection is not a new concept in the Medical Practice Act. In *Sobey* v. *Molony* (1940) 40 Cal.App.2d 381, 388 [104 P.2d 868], the Court of Appeal stated that the Legislature showed no intent to "benefit offending

---

[7]By order of this court on July 15, 1994, we took judicial notice of certain documents relating to the legislative history of Senate Bill No. 2375, which amended section 2229, that were supplied to us by the Board. We subsequently asked the Board to supply us with a complete history of Senate Bill No. 2375. We take judicial notice of the remaining legislative history documents supplied to us.

doctors at the expense of the general public," merely through "codification of the law relating to medical practice." In *Furnish* v. *Board of Medical Examiners* (1957) 149 Cal.App.2d 326, 331 [308 P.2d 924], the court explained that the Legislature established revocation and suspension proceedings for medical licenses in order "to protect the life, health and welfare of the people at large and to set up a plan whereby those who practice medicine will have the qualifications which will prevent, as far as possible, the evils which could result from ignorance or incompetency or a lack of honesty and integrity." Similarly, in *Shea* v. *Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 574 [146 Cal.Rptr. 653], the court stated, "The purpose of the State Medical Practice Act (§ 2000 et seq.) is to assure the high quality of medical practice; in other words, to keep unqualified and undesirable persons and those guilty of unprofessional conduct out of the medical profession. [Citations.]" Certainly, a chief purpose of the Medical Practice Act has always been public protection. (See § 2030, providing that the provisions of the chapter are to be construed as restatements and continuations of the same subject matter as found in previous medical practice acts.)

To the extent that legislative history is illuminating here, we note that in the uncodified statement of legislative intent the Medical Judicial Procedure Improvement Act lists five particular areas in which the physician discipline system was to be restructured: (1) interim protective measures; (2) enhanced reporting souces; (3) fair review and hearing without excessive delay; (4) high quality hearings; and (5) enhanced resources. (Stats. 1990, ch. 1597, § 1.) This act was intended by the Legislature to correct a situation in which the physician discipline system had been found inadequate to protect the health, safety, and welfare of the public against incompetent or impaired physicians. (*Ibid.*) Thus, this public protection purpose remained constant throughout the history of the Medical Practice Act, including the 1990 amendments to section 2229.

B

*Board's Discretion as to Penalty: Balancing Required*

We find it most significant that revocation of a license was a penalty available to the Board in its discretion both before and after the amendments were enacted. Section 2227, both historically and in its 1980 version effective through the amendments made in 1990 and thereafter, provided for revocation or suspension of practice or probation or other discipline to be available to the Board after a finding of guilt after a licensee's administrative

hearing. (See also § 2234 [providing grounds for discipline].) Thus, the amendments did not change the penalty to which Borden was subject at any of the relevant times. The amendments do not make a lawful act unlawful or change the penalty for the licensee's acts in a way that changes the legal effects of past events. (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.*, *supra*, 30 Cal.2d at p. 394.)[8] Thus, unlike in *In re Cindy B.*, *supra*, 192 Cal.App.3d 771, 783, Borden cannot be said to have had no notice that the penalty for the acts of gross negligence might be revocation of his license (as distinguished from the father in *Cindy B.* who had no notice that removal of his children from his custody could be the result of a dependency adjudication). This statutory amendment did not substantially change the legal effect of past events. (*Kizer* v. *Hanna*, *supra*, 48 Cal.3d at p. 7.)

In any case, because Borden's hearing was held in March and April of 1991, after the amendments went into effect in January of 1991, he is not justified in complaining that the amendments were a surprise to him because not raised by the Board until somewhat late in the proceedings. Borden was represented by counsel at the hearing and is presumed to have been on notice of the change in the law. (See *Hilton* v. *McNitt* (1957) 49 Cal.2d 79, 82 [315 P.2d 1] [parties and their attorneys are presumed to know applicable law concerned]; *Willett* v. *Schmeister Mfg. Co.* (1926) 80 Cal.App. 337, 339-340 [251 P. 932] [counsel's ignorance of a statutory time limitation is not excusable mistake or neglect].)

In any case, as we have shown, public protection has always been a predominant purpose of the medical discipline system, and the portion of the amendment placing public protection above rehabilitation in the Board's balancing decision gives the Board guidance in how to exercise its discretion. The extent of a penalty within the Board's discretion is for the Board to determine. (*Furnish* v. *Board of Medical Examiners*, *supra*, 149 Cal.App.2d at p. 332.) As stated, revocation was a penalty within the Board's discretion throughout these proceedings, both before and after the 1990 amendments. (§ 2227.) This discretion has a very broad scope and is not to be disturbed absent a manifest abuse of discretion. (*Yellen* v. *Board of Medical Quality Assurance* (1985) 174 Cal.App.3d 1040, 1060 [220 Cal.Rptr. 426].)

Moreover, rehabilitation remains a possibility under the 1990 amendments, unless it is inconsistent with public protection. Under section 2307, a person whose certificate has been revoked may seek reinstatement after three

---

[8]Because physician discipline proceedings are not penal in nature, ex post facto rules do not apply in considering retroactivity questions. (*Furnish* v. *Board of Medical Examiners*, *supra*, 149 Cal.App.2d at pp. 330-331.)

years have passed after revocation of the license. (§ 2307, subd. (a).) However, at the time of this hearing, the Board had the authority to order a revocation in the first instance, and the fact that it did not do so until the reconsideration stage of the proceedings does not indicate that the amendments substantively changed the law, since the matter of penalty was always within the scope of the Board's discretion. The Board was statutorily mandated to pursue the same objectives before and after the amendments. Borden failed to pursue his cross-appeal, which challenged the factual basis for the licensing action, and he has offered only speculation as to whether his behavior might have been affected by reliance on prior law, e.g., in not pursuing a plea bargain. (See *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1214 [246 Cal.Rptr. 629, 753 P.2d 585] [reasonable reliance on current legal principles will not be defeated absent clear legislative intent to override such reliance].) For this reason, and because the penalty determination was always within the Board's discretion, and was not changed by the amendments, we find this was not a substantive change in the law for which retroactive application was barred.

Because of our conclusions above, we need not address in detail the Board's backup arguments that even though these amendments did constitute substantive changes in the disciplinary system, they could still be applied retroactively, even if affecting the doctor's vested right in his licensing privileges, due to the state's police power to regulate the medical profession, and due to the conditional nature of licensing status, subject to a lack of cause for discipline. (See *In re Marriage of Bouquet, supra,* 16 Cal.3d at pp. 592-594.) It is well established, however, that the state may interfere with vested property rights under its police power "whenever reasonably necessary to the protection of the health, safety, morals, and general well being of the people." (*Id.* at p. 592; see *In re Ford* (1988) 44 Cal.3d 810, 816, fn. 6 [244 Cal.Rptr. 476, 749 P.2d 1331].)

Since we have concluded that the penalty of revocation was at all times within the Board's discretion, and since the matter of penalty is confided to the Board's discretion, it follows that the trial court erred in granting the petition for writ of mandate to require reconsideration of the penalty under prior law. The proper procedure is for this court to reverse the judgment with directions to the trial court to enter a new judgment denying the petition. (Code Civ. Proc., §§ 43, 909; *Pacific Motor Transport Co.* v. *State Bd. of Equalization* (1972) 28 Cal.App.3d 230, 239 [104 Cal.Rptr. 558].) This disposition makes moot the Board's motion to clarify the license status of Borden during the pendency of this appeal.

### DISPOSITION

The judgment is reversed with directions to the trial court to enter judgment denying the petition and vacating the stay order. Costs on appeal to appellant Division.

Nares, J., concurred.

**TODD, Acting P. J.**—I respectfully dissent.

The sole issue in this appeal is whether the 1990 amendments to Business and Professions Code[1] section 2229 should have been applied retroactively in determining Borden's penalty in this disciplinary proceeding.

The majority circumvents this issue by declaring that those amendments were not real changes but mere clarifications of the law. By so doing, the majority can reach the result it desires, but the effort does no justice either to the law or Borden, for whom the change in law clearly was detrimental.

A comparative reading of the plain language of section 2229 before and after the amendment demonstrates that the amendments constituted a change in the law. Prior to January 1, 1991, section 2229 provided: "In exercising its disciplinary authority the Division of Medical Quality or a medical quality review committee or panel thereof shall, wherever possible, take such action as is calculated to aid in the rehabilitation of the licensee, or where, due to lack of continuing education or other reasons, restriction on scope of practice is indicated, to order such restrictions as are indicated by the evidence. It is the intent of the Legislature that the division and committees shall seek out those licensees who have demonstrated deficiencies in competency and then take such actions as are indicated, with priority given to those measures, including further education, restrictions from practice or other means that will remove such deficiencies." (Stats. 1980, ch. 1313, § 2, p. 4473.)

In 1990, the Legislature amended section 2229 to read as follows:

"(a) Protection of the public shall be the highest priority for the Division of Medical Quality, a medical quality review committee, the California Board of Podiatric Medicine, and administrative law judges in exercising its disciplinary authority.

"(b) In exercising its disciplinary authority the Division of Medical Quality, Board of Podiatric Medicine, a medical quality review committee or

---

[1] All subsequent statutory references are to the Business and Professions Code unless otherwise specified.

panel thereof, or an administrative law judge, shall, wherever possible, take action as is calculated to aid in the rehabilitation of the licensee, or where, due to lack of continuing education or other reasons, restriction on scope of practice is indicated, to order restrictions as are indicated by the evidence.

"(c) It is the intent of the Legislature that the division, the enforcement program, and committees shall seek out those licensees who have demonstrated deficiencies in competency and then take those actions as are indicated, with priority given to those measures, including further education, restrictions from practice or other means that will remove those deficiencies. Where rehabilitation and protection are inconsistent, protection shall be paramount." (Stats. 1990, ch. 1597, § 14.)[2]

It is absurd to say the amendments merely clarified the law and did not change the law. The language of preamendment section 2229 emphasized rehabilitation of licensees where rehabilitation was possible. Section 2229, as amended in 1990, stated for the first time that "[p]rotection of the public shall be the highest priority for the Division of Medical Quality" and "[w]here rehabilitation and protection are inconsistent, protection shall be paramount." In essence, the amendment constituted a new hierarchy of priorities in the physician discipline system that cannot be viewed as a mere clarification.

The majority claims that the amendments to section 2229 merely reiterated the long-standing public policy of the state that the goal of the physician discipline system is to promote public protection. (See maj. opn., *ante*, at pp. 882-883.) Of course, public protection has been a goal of the system since its inception; no one can seriously dispute that proposition. However, the majority fails to demonstrate the law has always placed the highest priority on public protection. Indeed, the plain language of section 2229 prior to the 1990 amendments indicates otherwise by (1) mandating the disciplinary bodies to take action to aid in the rehabilitation of disciplined doctors and (2) expressly declaring the legislative intent to give priority to rehabilitative measures, i.e., "further education, restrictions from practice or other means that will remove such deficiencies [in compentency]."

Given this plain language of the statute before and after the subject amendments, I cannot accept the majority's conclusion that the amendments constituted only a clarification. The question remains whether the change in the law should be applied retroactively.

" 'A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of

---

[2]In 1993 the Legislature further amended section 2229 (Stats. 1993, ch. 1267, § 24) with nonsubstantive changes that need not concern us.

the statute.' " (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 391 [182 P.2d 159].)

It is well settled that generally new nondecisional law operates prospectively. (See *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d 388.) Our Supreme Court reiterated this principle in *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1206-1207 [246 Cal.Rptr. 629, 753 P.2d 585]:

"In resolving the statutory interpretation question, we are guided by familiar legal principles. In the recent decision of *United States* v. *Security Industrial Bank* (1982) 459 U.S. 70, 79-80 [74 L.Ed.2d 235, 243-244, 103 S.Ct. 407], Justice (now Chief Justice) Rehnquist succinctly captured the well-established legal precepts governing the interpretation of a statute to determine whether it applies retroactively or prospectively, explaining: *'The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student. [Citations.] This court has often pointed out: "[T]he first rule of construction is that legislation must be considered as addressed to the future, not the past. . . .* The rule has been expressed in varying degrees of strength but always of one import, that *a retrospective operation will not be given to a statute which interferes with antecedent rights . . . unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.' "* [Citation.]'

"California authorities have long embraced this general principle. As Chief Justice Gibson wrote for the court in *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d 388—the seminal retroactivity decision noted above—'[i]t is an established canon of interpretation that statues are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent.' (30 Cal.2d at p. 393.) This rule has been repeated and followed in innumerable decisions. [Citations.]" (Original italics.)

Thus, the analytical starting point is the presumption that statutes are ordinarily construed to operate prospectively—a presumption that can be rebutted if the Legislature manifested a contrary intent.

Did the Legislature intend the amendment to section 2229 to operate retroactively? There is no such express declaration in the legislation. "This factor is always considered significant because '[t]he Legislature is well acquainted with the rule requiring a clear expression or retroactive intent [citation], and the fact that it did not so express itself or did not make the amendment effective immediately is a significant indication it did not intend to apply the amendment retroactively.' [Citation.]" (*Wienholz* v. *Kaiser Foundation Hospitals* (1989) 217 Cal.App.3d 1501, 1505 [267 Cal.Rptr. 1].)

Nonetheless, the absence of an express declaration that the Legislature intended the law to be applied retroactively is not necessarily determinative.

(*Fox* v. *Alexis* (1985) 38 Cal.3d 621, 629 [214 Cal.Rptr. 132, 699 P.2d 309].)
"A wide variety of factors may be relevant to our effort to determine whether
the Legislature intended a new statute to be given retroactive effect. The
context of the legislation, its objective, the evils to be remedied, the history
of the times and of legislation upon the same subject, public policy, and
contemporaneous construction may all indicate the legislative purpose.
[Citation.]" (*Ibid.*)

Nothing presented to us by the board indicates any clear and unavoidable
implication of legislative intent to rebut the presumption against retroactivity
here.

The 1990 amendment to section 2229 was part of Senate Bill No. 2375,
also known as the "Medical Judicial Procedure Improvement Act" (Act).
(Stats. 1990, ch. 1597, § 39.) Among other things, the Act amended 21
statutes and added 7 new statutes to the Business and Professions Code,
amended a section of the Civil Code and added 8 new sections to the
Government Code. In the uncodified statement of legislative intent, the Act
provided:

"The 1989-90 Regular Session of the Legislature declares that the physi-
cian discipline system administered by the board's Division of Medical
Quality is inadequate to protect the health, safety, and welfare of the people
of California against incompetent or impaired physicians.

"It is, therefore, the intent of the Legislature to restructure the physician
discipline system of the Medical Board of California in order to give it
authority to act quickly in extreme cases to impose interim protective
measures or final sanctions short of license revocation or suspension; more
information from a variety of enhanced reporting sources and increased
public outreach; procedures which afford a fair review and hearing by an
experienced administrative law judge without excessive delay; procedures to
ensure a high quality hearing; and enhanced resources to finance such a
system in the interests of protecting the people of California. It is therefore
the intent of the Legislature to improve the discipline system of licensed
physicians and allied health professionals by creating a more expeditious and
efficient adjudicatory system and providing it the adequate resources for its
performance. It is also the intent of the Legislature that the pay scales for
investigators of the Medical Board of California be equivalent to the pay
scales for special investigative agents of the Department of Justice, in order
to attract and retain experienced investigators." (Stats. 1990, ch. 1597, § 1.)

The Act constitutes a massive restructing of the physician discipline system for the state. Manifestly, the Legislature enacted Senate Bill No. 2375 as curative legislation to end inadequacies in the physician discipline system; it was a reform measure meant to effectuate change. These inadequacies were highlighted in a report by the Center for Public Interest Law entitled Physician Discipline in California: A Code Blue Emergency (Apr. 5, 1989). (See Sen. Com. on Bus. & Prof., Analysis of Sen. Bill No. 2375 (1989-1990 Reg. Sess.) as amended Apr. 5, 1990, p. 1.) Absent some declaration or even hint of retrospective intent in this reform package to overhaul the physician discipline system, the only reasonable inference to draw is that the Legislature had a prospective intent.

The board's first argument in favor of retroactive application of the 1990 amendment to section 2229 is that the amendment was not a substantive change in the law but rather a clarification of existing law and therefore not subject to the general rule that statutes are not to be construed to apply retroactively. (See Bowen v. Board of Retirement (1986) 42 Cal.3d 572, 575, fn. 3 [229 Cal.Rptr. 814, 724 P.2d 500] [" 'An exception to the general rule that statutes are not construed to apply retroactively arises when the legislation merely clarifies existing law. . . .' " (Citations omitted.)].) As indicated above, I disagree with the majority's conclusion that the 1990 amendment to section 2229 was merely a clarification of existing law. I also note that it is somewhat disingenuous for the board to argue clarification here when it successfully argued before the Division of Medical Quality, as reflected in the division's "Decision After Reconsideration": "The penalty imposed by the Division in the prior decision is not consistent with the recent legislative mandate raising protection of the public above all other concerns, including rehabilitation of the licensee."

The board's present reading of the legislative history[3] on this point is unpersuasive. First, the board asks us to virtually ignore language in the Legislative Counsel's Digest, which, with respect to the amendment to section 2229, describes existing law and then states "[t]his bill would, instead, provide that the division . . . shall have the protection of the public as their highest priority. . . ." (Stats. 1990, ch. 1597.) The word "instead" certainly connotes that the legislation constitutes a substantive change rather than a clarification. Such usage does not appear to have been haphazard. We note that in summarizing 16 substantive areas of the Act, this Legislative Counsel's Digest used the "would, instead, provide" language with discrimination; that is, the Digest employed the word "instead" in 6 instances,

---

[3]Reference to the legislative history of a statute can assist a court in statutory construction. (Silva v. Superior Court (1993) 14 Cal.App.4th 562, 570, fn. 4 [17 Cal.Rptr.2d 577].) By order of this court on July 15, 1994, we took judicial notice of certain documents relating to the legislative history of Senate Bill No. 2375 that were supplied to us by the board.

while using "would require," "would also require," "would redefine," "would provide," "would authorize," "would revise," "would also specify," and "would also provide" to describe the legislation in the remaining areas. (Stats. 1990, ch. 1597.) These latter terms are more indicative of clarification than the "would, instead, provide" language.

Next, the board urges us to consider language[4] in the Staff Analysis of Senate Bill No. 2375 prepared for the Senate Committee on Business and Professions for the hearing on the bill on April 23, 1990. However, as the board acknowledges in its appellant's reply brief, that language in the analysis dealt with the California Medical Association's view on what a parallel provision in Assembly Bill No. 3563 would have done—not the view of the staff of the Senate Committee on Business and Professions on the import of Senate Bill No. 2375. The board attempts to legitimize this use of analysis of different legislation by relying on *Johnson* v. *Superior Court* (1994) 25 Cal.App.4th 1564, 1569 [31 Cal.Rptr.2d 199], in which the Court of Appeal, in construing another section of the Act, relied upon a Senate committee staff analysis and its summary of the California Medical Association's critique on Assembly Bill No. 3563. However, *Johnson* involved interpretation of Civil Code section 43.8 as it was amended by Senate Bill No. 2375; Assembly Bill No. 3563 contained language duplicating this amendment. The language of the amendment to section 2229 in Senate Bill No. 2375 differed from the language of Assembly Bill No. 3563. In any event, assuming arguendo that the language of the staff analysis on the import of Assembly Bill No. 3563, as quoted in footnote 4, *ante*, is indirect evidence of the legislative history of Senate Bill No. 2375, the probative value of such indirect evidence to our inquiry pales significantly in the face of the language of the Legislative Counsel's Digest to Senate Bill No. 2375.[5]

In sum, I conclude there is nothing in this record to rebut the presumption that the 1990 amendment to section 2229 should be construed to operate prospectively. The legislation is silent on the issue of retroactive application. From my reading of the legislative history, I infer an implied legislative

[4]The language, which discusses the priorities of the Division of Medical Quality under the legislation, is as follows: "Clarifies that public protection and rehabilitation of the licensee shall be the board[']s highest priority and where rehabilitation and protection are inconsistent, protection shall be paramount." (Sen. Com. on Bus. & Professions, Analysis of Sen. Bill No. 2375 (1989-1990 Reg. Sess.) as amended Apr. 5, 1990, p. 9.)

[5]Moreover, in the Staff Analysis of Senate Bill No. 2375 as prepared for the Senate Committee on Business and Professions, the staff couched the central issue presented by the legislation as follows: "Whether the current reporting and discipline system, for specified health professionals, be revised for better patient protection and enhanced enforcement." (Sen. Com. on Bus. & Professions, Analysis of Sen. Bill No. 2375, *supra*, as amended Apr. 5, 1990, p. 1.) A revision is more in keeping with substantive change than it is with a clarification.

intent for a prospective application. And, as discussed above, I reject the notion the amendment was a mere clarification of existing law rather than a substantive change in the law.