[No. B132654. Second Dist., Div. Six. May 22, 2000.]

MICHAEL A. HUSON, Plaintiff and Appellant, v.
COUNTY OF VENTURA, Defendant and Respondent.

**COUNSEL**

Trevor A. Grimm; Jonathan M. Coupal; and Timothy A. Bittle for Plaintiff and Appellant.

James L. McBride, County Counsel, William C. Moritz and Desiree D. Peri, Assistant County Counsel, for Defendant and Respondent.

**OPINION**

**COFFEE, J.**—A homeowner disputes the method by which the county assessor valued his home following its purchase. He argues that this practice is now disallowed by a recent statutory amendment and the statute should be retroactively applied to the valuation of his property. The trial court rejected this argument. We vacate and remand.

### FACTS

Appellant Michael A. Huson owns a single-family residence in the City of Simi Valley. He bought the home in 1995 for a purchase price of $176,000, and assumed the obligation to pay a $12,086 improvement bond lien imposed by the City of Simi Valley. Respondent County of Ventura (County) reassessed Huson's home at $188,350, which included the improvement bond. The resulting increase in tax computed on the base year value of Huson's property was approximately $191.56.

Huson filed an application for changed assessment with the County Assessment Appeals Board (AAB) in 1996, asserting that $176,000 was the proper base year value by which his property should be assessed. He stated that the improvements were made on public streets for curbs, lighting, and sewers, on property he neither owns nor controls.

The AAB reviewed comparable sales, and found the base year value of Huson's property to have a range of $188,350 to $205,000 at the time of purchase. Thus, the $186,086 assessment constituted fair market value.

In April 1998, Huson filed a complaint for refund of property tax in superior court, pursuant to Revenue and Taxation Code section 5140.[1] In September 1998, while his action was pending, the Legislature amended section 110, governing the method for assessment of real property. The amendment created a rebuttable presumption that the amount of the improvement bond is included in the purchase price. It placed the burden on the assessor to rebut the presumption that the purchase price reflects fair market value. (§ 110, subd. (b), as amended by Stats. 1998, ch. 783, § 1.)

The trial court affirmed the AAB's decision, ruling that the County had followed proper procedure as it existed prior to the passage of the amendment to section 110 (Sen. Bill No. 1997 (1997-1998 Reg. Sess.)). At that time, it was the policy of the State Board of Equalization to add the improvement bond balance to the purchase price. The court also examined the legislative history of section 110, and concluded that there was no express intention that the amendment would be retroactive. Even if the statute had been retroactive, the court reasoned, the result would have been the same. It found that the County had presented sufficient evidence of comparable sales to show that Huson's property had been assessed at fair market value.

### DISCUSSION

#### Standard of Review

"Two rules govern our review. Any factual determinations made by the administrative agency are binding on the appellate court if supported by substantial evidence. [Citation.] Secondly, when the issues involve the proper application of a statute or administrative regulation, the trial court's legal conclusions are not binding on the appellate court." (*Osburn v. Department of Transportation* (1990) 221 Cal.App.3d 1339, 1344 [270 Cal.Rptr. 761].)

"When the assessor utilizes an approved valuation method, his factual findings and determinations of value based upon the appropriate assessment method are presumed to be correct and will be sustained if supported by substantial evidence. If the underlying valuation methodology is challenged, however, the issue becomes a question of law subject to de novo review both by the superior court and on appeal." (*Service America Corp. v. County of San Diego* (1993) 15 Cal.App.4th 1232, 1235 [19 Cal.Rptr.2d 165].)

---

[1] All other statutory references are to the Revenue and Taxation Code.

## Amendment of Section 110

The passage of Proposition 13 required that the County reassess real property at a new "base year value" when the property is subject to a change in ownership or new construction. (Cal. Const., art. XIII A, § 2; Rev. & Tax. Code, § 50.) The base year value is determined by the fair market value of the property, as of the date of transfer or completion of construction. (§ 110.1.) Huson argues that his base year value was incorrectly computed by adding the amount of the improvement bond to the purchase price.

Prior to the amendment of section 110, it was common practice for assessors to add the lien amount to the purchase price to determine a property's assessed value. Thus, the affected homeowner was taxed on both the fair market value of the property plus the amount of the bond.[2]

The former version of section 110, subdivision (b), defined "full cash value" or "fair market value" as "the purchase price paid in the transaction unless it is established by a preponderance of the evidence that the real property would not have transferred for that purchase price in an open market transaction. . . . 'Purchase price,' . . . means the total consideration provided by the purchaser or on the purchaser's behalf, valued in money, whether paid in money or otherwise. . . ."

Effective September 1998, the Legislature amended section 110. The text cited above remained substantially the same, but the following language was added: "There is a rebuttable presumption that the value of improvements financed by the proceeds of an assessment resulting in a lien imposed on the property by a public entity is reflected in the total consideration, exclusive of that lien amount, involved in the transaction. This presumption may be overcome if the assessor establishes by a preponderance of the evidence that all or a portion of the value of those improvements is not reflected in that consideration." (§ 110, subd. (b), as amended by Stats. 1998, ch. 783, § 1.) The amendment created a rebuttable presumption that the amount of the improvement bond is included in the purchase price. It placed the burden on

---

[2]A special assessment is a lien imposed upon real property by a public entity to finance a public improvement. (*Solvang Mun. Improvement Dist. v. Board of Supervisors* (1980) 112 Cal.App.3d 545, 552 [169 Cal.Rptr. 391].) Local governments commonly form special assessment districts that sell tax-exempt improvement bonds to investors. Bond proceeds pay for onsite improvements (such as streets and utility services) that enhance land value. The purchaser of a parcel generally assumes the outstanding improvement bond balance associated with his parcel. (Assem. Com. on Rev. & Tax., Rep. on Sen. Bill No. 1997 (1997-1998 Reg. Sess.) June 29, 1998.)

the assessor to rebut the presumption that the purchase price reflects fair market value. (*Ibid.*)

### Retroactivity of Statute

Huson claims that the statute should be applied retroactively. He argues that it is remedial in nature and was enacted to clarify existing law. Thus, he reasons, legislative intent for retroactive application may be inferred. The County argues that the statute is not retroactive and also contends that the statutory language defining purchase price as "total consideration . . . , *whether paid in money or otherwise*" indicates legislative intent to include the assumption of debt as consideration.

Legislative enactments are presumed to operate prospectively, unless there is an express declaration of retroactivity. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1207, 1227 [246 Cal.Rptr. 629, 753 P.2d 585]; *Wienholz v. Kaiser Foundation Hospitals* (1989) 217 Cal.App.3d 1501, 1505 [267 Cal.Rptr. 1].) An exception exists, however. "[A] statute that merely *clarifies*, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment. ʼ. . . Such a legislative act has no retrospective effect because the true meaning of the statute remains the same." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507] [Senate Bill whose stated purpose was to "confirm and clarify" existing law held immediately applicable]; *Borden v. Division of Medical Quality* (1994) 30 Cal.App.4th 874, 882 [35 Cal.Rptr.2d 905].) A clarification "is indicative of a legislative intent that the amendment apply to all existing causes of action from the date of its enactment." (*Western Security Bank, supra,* at p. 244; *California Emp. etc. Com. v. Payne* (1947) 31 Cal.2d 210, 214 [187 P.2d 702].)

The Department of Finance Analysis of Senate Bill No. 1997, dated May 19, 1998, specifies that "[t]his bill would *clarify* that the definition of full value for assessment and property taxation purposes does not include improvement bonds." (Italics added.) A May 27, 1998, Senate Bill analysis warns that "a desperate situation exists" concerning assessments where improvement bonds are being added to the property's purchase price. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1997 (1997-1998 Reg. Sess.) as amended May 19, 1998, arguments in support, par. 3.) "The bill is intended to *clarify* that the amount paid for the property, exclusive of the amount of improvement bond balances, should be used by assessors as full cash value for property tax purposes." ((*Id.,* par. 1.) Italics added.)

This sentiment was echoed in the June 29, 1998 Assembly Revenue and Taxation Committee Report. Current assessment practices were said to have led to "taxpayer confusion, because taxpayers commonly expect their property taxes to be based on the purchase price of their property, not the

purchase price plus some upward adjustment." (Assem. Com. on Rev. & Tax., Rep. on Sen. Bill No. 1997 (1997-1998 Reg. Sess.) as amended May 19, 1998, p. 2.) The bill provides that "an assessor may not value a property by increasing its sales price to account for an outstanding improvement bond unless the adjustment is preceded and supported by a market analysis based on the sales prices of comparable properties without improvement bonds." (*Id.*, p. 1.) The report concludes that the amendment is expected to result in lower assessed values for some properties.

Senate Bill No. 1997 was authored by Senator Ross Johnson, following inconsistent property assessment practices in Orange County. ▮ " ' "An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute. . . ." (1A Singer, Sutherland Statutory Construction (5th ed. 1993) § 22.31, p. 279, fns. omitted.)' " (*Western Security Bank v. Superior Court, supra,* 15 Cal.4th at pp. 243-244; *RN Review for Nurses, Inc. v. State of California* (1994) 23 Cal.App.4th 120, 125 [28 Cal.Rptr.2d 354].)

▮ The legislative history indicates that the amendment to section 110 was intended to clarify the method of real property assessments to exclude the improvement bond liens from the calculation of a property's fair market value. This being the case, the amendment must be applied to Huson's claim which was pending as of the date of the September 1998 enactment. (*Western Security Bank v. Superior Court, supra,* 15 Cal.4th at p. 244.) In light of our holding, it is unnecessary for us to address Huson's remaining arguments relative to the application of section 110.[3]

*Evidence Presented to Rebut Presumption*

The County claims that, even if the statute were retroactive, the purchase price plus the amount of the bond is less than the fair market value of comparable sales. Thus, there is sufficient evidence to rebut the presumption that the purchase price, standing alone, is the fair market value. Huson attacks the trial court's finding of comparable sales. He argues that the AAB drafted its findings to indicate a "value range" of $188,350 to $205,000 to justify overassessment in the event that the County's legal argument failed.

According to the AAB's findings of fact and decision, finding No. 6 indicated that the comparable sales evidence presented by the County was

---

[3]Huson argues that the term "purchase price" should be defined as the fair market value of the cash or its equivalent which changes hands between buyer and seller. He also claims that a government imposed lien cannot be treated as a private mortgage or as consideration.

sufficient to support a value range of $188,350 to $205,000. The AAB noted deficiencies in Huson's comparable sales analysis and stated that it found the County's evidence more persuasive.

Whatever may be the resolution of this argument, the AAB's addition of the amount of the lien to the purchase price was based upon an incorrect interpretation of law. It, therefore, should be afforded an opportunity to reassess Huson's property using the interpretation outlined in this opinion.

The judgment is vacated and the matter remanded to the trial court with instructions to order the AAB to conduct a further hearing to determine the assessed value of Huson's property. Costs to appellant.

Gilbert, P. J., and Yegan, J., concurred.