TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  | : |  |
|---|---|---|
| OPINION | : |  |
|  | : | No. 95-108 |
| of | : |  |
|  | : | November 2, 1995 |
| DANIEL E. LUNGREN | : |  |
| Attorney General | : |  |
|  | : |  |
| MAXINE P. CUTLER | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

_____


THE HONORABLE DAVID KELLEY, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following questions:

1. Must all extended warranties executed by a structural pest control operator include the performance of periodic inspections?

2. Do the statutory requirements for executing a control service agreement by a structural pest control operator apply to agreements executed prior to the statute's effective date of January 1, 1994?

CONCLUSIONS

1. All extended warranties executed by a structural pest control operator must include the performance of periodic inspections.

2. The statutory requirements for executing a control service agreement by a structural pest control operator do not apply to agreements executed prior to the statute's effective date of January 1, 1994.

ANALYSIS

The Legislature has enacted a comprehensive statutory scheme regulating the practice of structural pest control. (Bus. & Prof. Code, §§ 8500-8697.5.)[1] Operators and field representatives must be qualified in the use and understanding of poisons and other chemicals used in pest control and the theory and practice of pest control. (§§ 8506, 8507, 8565, 8566.) After inspection and completion of a report describing and diagraming infestation and conditions likely to lead to infestation, as well as recommendations for corrective measures, a company may enter into a contract with the consumer to eradicate or control pests. (§ 8516.)

The focus of our inquiry concerns the terms and conditions of section 8516. The statute applies to wood destroying pests or organisms and prescribes the requirements registered companies must meet in order to perform work on contracts to correct any infestation. A control service agreement may be entered into if the specified requirements listed in section 8516 regarding inspection and reporting are met. Section 8516 provides in part:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) No registered company or licensee shall commence work on a contract, or sign, issue, or deliver any documents expressing an opinion or statement relating to the absence or presence of wood destroying pests or organisms until an inspection has been made by a licensed Branch 3 field representative or operator. The registered company shall retain for three years all field reports from which a verbal or written estimate of or solutions for work are made. A written inspection report conforming to this section and on a form prescribed by the board shall be predated and delivered to the person requesting the inspection or to the person's designated agent. A copy of each report shall be filed with the board at the time the report is delivered or not later than 10 working days after the date the inspection is commenced, except an inspection report prepared for use by an attorney for litigation is not required to be filed with the board. The report shall be delivered to the person requesting the inspection, or to the person's designated agent, before work is commenced. The following shall be set forth in the report:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(6) A foundation diagram or sketch of the structure or structures or portions of the structure or structures inspected, indicating thereon the approximate location of any infested or infected areas evident, and the parts of the structure where conditions which would ordinarily subject those parts to attack by wood destroying pests or organisms exist.

---

[1] Unless otherwise indicated, all section references hereafter are to the Business and Professions Code.

"(7)   Information regarding the substructure, foundation walls and footings, porches, patios and steps, air vents, abutments, attic spaces, roof framing that includes the eaves, rafters, fascias, exposed timbers, exposed sheathing, ceiling joists, and attic walls, or other parts subject to attack by wood destroying pests or organisms. Conditions usually deemed likely to lead to infestation or infection, such as earth wood contacts, excessive cellulose debris, faulty grade levels, excessive moisture conditions, evidence of roof leaks, and insufficient ventilation are to be reported.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(10)   Recommendations for corrective measures.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(12)   The inspection report shall clearly disclose that if requested by the person ordering the original report, a reinspection of the structure will be performed if an estimate or bid for making repairs was given with the original inspection report, or thereafter.

"An estimate or bid for repairs shall be given separately allocating the costs to perform each and every recommendation for corrective measures as specified in subdivision (c) with the original inspection report if the person who ordered the original inspection report so requests, and if the registered company is regularly in the business of performing corrective measures.

"If no estimate or bid was given with the original inspection report, or thereafter, then the registered company shall not be required to perform a reinspection.

"A reinspection shall be an inspection of those items previously listed on an original report to determine if the recommendations have been completed.   Each reinspection shall be reported on an original inspection report form and shall be labeled `Reinspection' in capital letters by rubber stamp or typewritten.   Each reinspection shall also identify the original report by date and stamp numbers.

"After four months from an original inspection, all inspections shall be original inspections and not reinspections.

"Any reinspection shall be performed for not more than the price of the registered company's original inspection price and shall be completed within 10 working days after a reinspection has been ordered.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(f) The report and any contract entered into shall also state specifically when any guarantee for the work is made, and if so, the specific terms of the guarantee and the period of time for which the guarantee shall be in effect.

"(g) Control service is defined as the regular reinspection of a property after a report has been made in compliance with this section and such corrections as have been agreed upon have been completed. Under a control service agreement a registered company shall refer to the original report and contract in a manner as to identify them clearly, and the report shall be assumed to be a true report of the conditions as originally issued, except it may be modified after a control service inspection. A registered company is not required to issue a report as outlined in paragraphs (1) to (9), inclusive, of subdivision (b) after each control service inspection. If after control service inspection, no modification of the original report is made in writing, then it will be assumed that conditions are as originally reported. A control service contract shall state specifically the particular wood destroying pests or organisms and the portions of the buildings or structures covered by the contract.

"(h) A registered company or licensee may enter into and maintain a control service agreement provided the following requirements are met:

"(1) The control service agreement shall be in writing, signed by both parties, and shall specifically include the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(F) The frequency of the inspections to be provided, the fee to be charged for each renewal, and the duration of the agreement.

"(G) Whether the fee includes structural repairs.

"(H) If the services provided are guaranteed, and, if so, the terms of the guarantee.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(3) A full inspection of the property covered by the control service agreement shall be conducted and a report filed pursuant to subdivision (b) at least once every three years from the date that the agreement was entered into, unless the consumer cancels the contract within three years from the date the agreement was entered into.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(6) For purposes of this section, `control service agreement' means any agreement, including extended warranties, to have a licensee conduct over a period of

time regular inspections and other activities related to the control or eradication of wood destroying pests and organisms.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

1. Requiring Inspections

The first question presented concerns whether all extended warranties executed by a licensed pest control operator must include periodic inspections as part of the agreement. While section 8516 clearly contemplates that some extended warranties will include regular inspections (§ 8516, subd. (h)(6)), does the statute require *all* extended warranties to include the performance of inspection services?

In examining the language of section 8516, we are guided by several principles of statutory construction. "When interpreting a statute our primary task is to determine the Legislature's intent." (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.) "In determining intent, we look first to the language of the statute, giving effect to its `plain meaning.'" (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208-209.) "To discern legislative intent, we must examine the legislative history and statutory context of the act under scrutiny." (*Sands* v. *Superior Court* (1983) 34 Cal.3d 567, 570; accord, *Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736, 743.) "[I]t is well established that reports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain. [Citations.]" (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7.) "`The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'" (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268.) "We presume the Legislature intends to change the meaning of a law when it alters the statutory language . . . ." (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 461.)

Applying these principles to the provisions of section 8516, we find that the statute does not specifically define the term "extended warranties." Subdivision (f) of section 8516 requires that the initial inspection report "shall . . . state specifically when any guarantee for the work is made, and if so, the specific terms of the guarantee and the period of time for which the guarantee shall be in effect." Subdivision (h)(1)(H) of section 8516 requires that a control service agreement shall specify "[i]f the services provided are guaranteed, and, if so, the terms of the guarantee."

The word "warranty" is commonly defined as "a usu[ally] written guarantee of the integrity of a product and the good faith of the maker given to the purchaser and generally specifying that the maker will for a period of time be responsible for the repair or replacement of defective parts and will sometimes also provide periodic servicing (a one-year [warranty] on a television set)." (Webster's New Internat. Dict. (3d ed. 1971) p. 2578.) The word "extended" is commonly defined as "drawn out in length . . . esp[ecially] in length of time." (*Id*., at p. 804.) Nothing in the common

definitions of "extended" or "warranties" requires or precludes the performance of periodic inspections by the warrantor.

The key language of section 8516 requiring interpretation is subdivision (h)(6). It defines a "control service agreement" as "any agreement, including extended warranties, to have a licensee conduct over a period of time regular inspections and other activities related to the control or eradication of wood destroying pests and organisms." The Legislature's choice of language is ambiguous. It could mean that all extended warranties are control service agreements or only those that "have a licensee conduct over a period of time regular inspections . . . ." Which did the Legislature intend?

Obviously, an agreement that does not include periodic inspections could be priced lower than one that does. The property owner in such circumstances could contract separately with the licensee for inspections, or contract with another company, or possibly perform the inspections himself or herself. Inspection of the property by a different company might well be in the best interests of the consumer. On the other hand, it must be conceded that without any inspections, an extended warranty covering termite infestations would reduce the value of the warranty significantly.

We believe that the legislative history of the 1993 amendment of 8516 which added subdivision (h) (Stats. 1993, ch. 269, § 1) discloses what the Legislature intended. In the report of the Assembly Committee on Consumer Protection, Governmental Efficiency and Economic Development for its hearing of June 23, 1993, the proposed legislation was described in part as follows:

> "This bill would tighten requirements for control service and extended warranty agreements by requiring the company to perform a compete inspection, as specified, and to issue a report at least once every three years.



> "Additionally, the bill codifies and clarifies what services must be provided to the consumer by a pest control company that offers a control service agreement. A key part of the stipulated agreement is a full inspection with a report filed at least once every three years. These agreements function as extended warranties."

Based upon this legislative history, it is clear that all extended warranties are to include follow-up inspections in order for consumers to be properly protected. Extended warranties constitute control service agreements. The Legislature intended for property owners to receive periodic inspections and notification of any further infestation and the need for corrective measures covered by their warranties.

In answer to the first question, therefore, we conclude that all extended warranties executed by a structural pest control operator must include the performance of periodic inspections.

2. Retroactive Application

The second inquiry concerns whether the requirements of subdivision (h) of section 8516 with respect to the execution of control service agreements apply to agreements executed prior to January 1, 1994, the effective date of the statutory amendment. We conclude that the statutory requirements apply only to agreements executed after January 1, 1994.

Unless passed as an urgency measure, which goes into effect immediately upon enactment, a statute enacted at a regular session of the Legislature goes into effect on January 1 of the following year. (Cal. Const., art. IV, § 8, subd. (c)(1).) Once in effect, a statute may have retroactive application by affecting the rights, obligations, acts, transactions, or conditions which were performed or existed prior to the adoption of the statute. (*Borden* v. *Division of Medical Quality* (1994) 30 Cal.App.4th 874, 880.) However, legislation may not be retroactively applied when it constitutes an impairment of an existing contract. (U.S. Const., art. 1, § 10; Cal. Const., art. 1, § 9; *In re Marriage of Hilke* (1992) 4 Cal.4th 215, 222.)

In this instance, we need not determine the constitutionality of applying section 8516 retroactively. Rather, we may rely upon the governing principles of statutory construction in concluding that the 1993 amendment to section 8516 was not intended by the Legislature to be applied retroactively. As stated by the Supreme Court in *Evangelatos* v. *Superior Court* (1988) 44 Cal. 3d 1188, 1207:

> "[S]tatutes are not to be given a retrospective operation unless it is clearly made to appear by express language or clear and unavoidable implication that such was the legislative intent."

We have found no indication in the language of section 8516 itself or in the legislative history of the 1993 amendment suggesting that the Legislature intended the new requirements to apply retroactively. As explained in Legislative Counsel's Digest, the purpose of the 1993 legislation was to "allow a registered company or licensee to enter into and maintain a control services agreement." In the report of the Senate Business and Professions Committee for its hearing of April 26, 1993, the proposed legislation was described in part as follows:

> ". . . Existing regulations of the SPCB (16 Cal. Code of Regulations 1998) contain requirements that must be met whenever a company enters into a so-called `control services agreement' (maintenance contract).

> "This bill would allow a registered company or licensee to enter into and maintain a control services agreement regarding work applicable to wood destroying pests or organisms if specified requirements are met. . . .

> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> ". . . The bill is . . . intended to provide better protection to consumers who enter into control service agreements with structural pest control companies by clearly establishing in statute what requirements must be met.

"The bill would enact a statutory provision that would codify the SPCB's current regulations (16 CCR 1998) relative to control service agreements plus a few additional requirements. The specified requirements include that: (1) Agreements must be in writing and specify various items such as what pests are being controlled, the type and manner of treatment to be employed, the frequency of inspections to be provided, the fee and whether structural repairs are included; (2) Inspections be made at least once every 3 years, and be done by a licensee in the appropriate `branch' (classification) of structural pest control; and (3) Written reports be issued unless specified conditions are met."

Based upon the language of section 8516 and the Legislature's intent as expressed in the legislative history of the 1993 amendment, we conclude that the statutory requirements for executing a control service agreement by a structural pest control operator do not apply to agreements executed prior to January 1, 1994.

\* \* \* \* \*