[S.F. No. 24712. May 20, 1985.]

DALE WAYNE FOX, Plaintiff and Respondent, v.
DORIS V. ALEXIS, as Director, etc., Defendant and Appellant.

■■■■■■■

■■■■■■■■■■■■

COUNSEL

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Faith J. Geoghegan, Deputy Attorney General, for Defendant and Appellant.

William J. Owen and Albert W. Brodie for Plaintiff and Respondent.

Wilbur F. Littlefield, Public Defender (Los Angeles), Laurence M. Sarnoff and John Hamilton Scott, Deputy Public Defenders, as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

REYNOSO, J.—We must determine whether the statutes in effect at the time of plaintiff Fox's (petitioner or Fox) criminal offense or those in effect at the time of his conviction of driving under the influence of alcohol control actions taken by the Department of Motor Vehicles to revoke his driver's license. For reasons which we explain below, we conclude that the law which was in effect at the time of the offense controls.

On February 25, 1982, a jury found petitioner Dale Wayne Fox guilty of driving under the influence of alcohol or a drug on December 19, 1981. (Former Veh. Code, § 23102, subd. (a); see now, § 23152.)[1]

Fox admitted two previous convictions. The Sacramento Municipal Court entered judgment granting probation for a period of three years. The conditions of probation included a financial penalty, service of 40 days in county jail, a requirement that Fox not drive with a measurable amount of alcohol in his system, and a requirement that Fox participate in an alcoholism treatment program meeting statutory requirements.

Subsequently, the Department of Motor Vehicles (Department) notified Fox that his license to operate a motor vehicle had been revoked for a period of three years. The Department acted pursuant to amendments to sections 13352 and 13352.5 which became effective January 1, 1982, after the date of Fox's offense. Under prior section 13352.5 Fox's court-ordered participation in an approved alcoholism rehabilitation program for one year would have prevented the Department from suspending or revoking his license, so long as his participation was satisfactory. Under the new statutes the Department is directed to revoke Fox's license regardless of such participation.

[1] All statutory references are to the Vehicle Code, unless otherwise noted.

Fox petitioned the Sacramento County Superior Court for a writ of mandate directing the Department to set aside the order of revocation. After hearing the court granted the writ. The Department appeals.

As we explain below, we conclude that the Legislature did not intend to depart from the established rule that new statutes are to be applied prospectively only; the laws in effect at the time of the offense control revocation of petitioner's license. The Department therefore erred in revoking petitioner's license pursuant to section 13352 as amended by Statutes 1981, chapter 940, section 5 and Statutes 1982, chapter 53, section 16. We will affirm the judgment of the Sacramento Superior Court setting aside the order of revocation.

I

The new statutes at issue became law pursuant to an extensive amendment and reenactment of Vehicle Code provisions relating to driving under the influence of intoxicating liquor and drugs. (Statutes 1981, ch. 940, Stats. 1981, ch. 941, and Stats. 1982, ch. 53.) The amended statutes generally subject offenders to increased penalties for driving under the influence (DUI). The stricter sanctions include higher fines, lengthier jail sentences, mandatory terms of probation and mandatory sentences for repeat offenses. (See, §§ 23160-23206; cf. former § 23102.) The new legislation restricted the power of the criminal courts to avoid imposing mandatory jail sentences and fines. (See, §§ 23161, 23166, 23171, 23200, 23206.) The statutes defining criminal penalties for second and third offenses now include directives that licenses be suspended by the Department. (§§ 23165, 23170.)

As a matter of form the code sections defining the basic DUI offenses were renumbered (e.g., former § 23102 became § 23152; former § 23101 became § 23153). The criminal penalties for first and repeat offenses are now set forth in separate sections of the statute. (See, e.g., §§ 23160, 23165, 23170.) Provisions for probation are made in still other sections. (See, §§ 23161, 23166, 23171, 23206.)

Section 13352[2] authorizes the Department to revoke the licenses of persons convicted of specified DUI offenses. The Department's authority is

---

[2]Section 13352 provides in pertinent part: "(a) The department shall immediately suspend or revoke the privilege of any person to operate a motor vehicle upon receipt of a duly certified abstract of the record of any court showing that the person has been convicted of a violation of Section 23152 or 23153 or subdivision (a) of Section 23109. . . For the purposes of this section, suspension or revocation shall be as follows:

"...........................................

"(5) Upon a conviction or finding of a violation of Section 23152 punishable under Section 23170, the privilege shall be revoked for a period of three years. The privilege shall not be reinstated until the person files proof of ability to respond in damages as defined in Section 16430."

circumscribed by section 13352.5, which exempts certain persons from mandatory suspension if the trial court certifies their participation in an alcoholism rehabilitation program approved pursuant to the Health and Safety Code.[3]

Chapter 940 of the Statutes of 1981 effective January 1, 1982, affected sections 13352 and 13352.5 in two respects relevant here. The format of section 13352 now directs departmental actions by reference to the criminal statutes for repeated DUI offenses. Section 13352.5 as amended requires a formal order of probation and no longer provides exemption for persons convicted of third or subsequent offenses. Chapter 53 of the Statutes of 1982 (urgency, eff. Feb. 18, 1982) restricted the section 13352.5 exemption for second offenders as well, by requiring that in addition to participation in a rehabilitation program their driving privilege must be restricted for one year to "necessary travel to and from that person's place of employment and to and from the treatment program. . . ." (§ 23166, subd. (b); see, §§ 13352.5, subd. (a); 13352.5, subd. (b); 23166 and 23186.) Sections 23171 and 23176 specify that a grant of probation upon conditions including participation in a rehabilitation program do not relieve the licensee of a mandatory revocation of his or her license.

## II

The Department argues that it did not retroactively apply section 13352 when it revoked petitioner's license. First, the Department contends that receipt of the abstract of judgment showing Fox's conviction was the event which triggered the revocation. The judgment was entered and the abstract of it received after the January 1, 1982, effective date of the amended statute. The statute was thus applied prospectively.

Section 13352 directs the Department to suspend or revoke the license of any person convicted of specified DUI offenses "upon receipt of a duly certified abstract of the record of any court showing that the person has been convicted. . . ." According to the statute receipt of the abstract of judgment is the event which triggers administrative action. This fact does not, however, unavoidably lead to the Department's conclusion that no retroactive application of the statute is involved.

---

[3]Section 13352.5 provides in relevant part: "(a) Unless ordered to do so by the court upon a finding that the terms and conditions of probation were violated, the department shall not suspend, pursuant to paragraph (3) of subdivision (a) of Section 13352, but shall restrict the privilege of any person to operate a motor vehicle upon a conviction or finding that the person violated Section 23152, but only if the court has certified to the department that the court has granted probation to the person on conditions which include the conditions specified in subdivision (b) of Section 23166 and the court has restricted the privilege to operate a motor vehicle as provided in that subdivision."

To the contrary, an examination of the language of the relevant statutes shows that the substantive basis for the revocation of petitioner's license was his commission of a DUI offense within five years of two prior offenses. (§ 23170.) The statutory requirement that all offenses have resulted in conviction and the statute's directive that the Department act only upon receipt of a "duly certified abstract of the record of any court showing that the person has been convicted of driving a motor vehicle while under the influence of intoxicating liquor or any drug . . ." (§ 13352) do not alter the basis of the administrative action. These prerequisites are necessary in order to assure that the licensee has been found to have committed the triggering offenses in judicial proceedings conducted in accord with the constitutional guarantees of due process of law. Nevertheless, it is from the commission of the offenses, properly proved, that the sanction of license revocation flows. (Cf. *Johnson* v. *Alexis* (1983) 143 Cal.App.3d 82 [191 Cal.Rptr. 529], where the applicable statute called for suspension " 'upon the second *conviction* of the drunk driving offense within five years.' " (143 Cal.App.3d at p. 84, quoting from former § 13352, as enacted by Stats. 1978, ch. 911, italics supplied by Court of Appeal.))

At the time Fox committed his third offense the trial court's certificate of his participation in an approved alcoholism rehabilitation program would have prevented the department from revoking his license. (Former § 13352.5, subd. (a).) Amendments to section 13352 and 13352.5 which became effective after Fox committed his offense mandate revocation of his license regardless of any such participation. To apply these new statutes to conduct which occurred prior to their effective enactment is "to apply the new law of today to the conduct of yesterday," a basic form of retroactive application of the statute. (See *Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 836 [27 Cal.Rptr. 19, 377 P.2d 83].)

The Department next contends that it did not apply section 13352 retroactively because the statute looks to present fitness to exercise the driving privilege. Present fitness, according to the Department, may validly be established by reference to past conduct. The Department relies on *Murrill* v. *State Board of Accountancy* (1950) 97 Cal.App.2d 709 [218 P.2d 569].

In *Murrill* a public accountant lost his professional license after the State Board of Accountancy found him guilty of the unprofessional conduct of wilfully withholding income tax information about a client from the United States government. The tax returns involved had been made several years earlier; Murrill had pled guilty to a federal offense approximately a year prior to the commencement of the state board's action. The State Accountancy Act, pursuant to which the board acted, became effective after the date Murrill committed his criminal offense.

In a petition for writ of mandate, Murrill claimed that retrospective application of the act to revoke his license was void either because it deprived him of a vested right or because it was an ex post facto law prohibited by the California and federal Constitutions. The Court of Appeal denied relief. The court held the ex post facto clause inapplicable because revocation of the professional license was not penal in nature, and found no unconstitutional infringement on vested rights because Murrill had no vested right to continue in his profession. For purposes of both holdings the Court of Appeal assumed that the statute was applied retrospectively to Murrill's conduct. (See 97 Cal.App.2d at p. 711.) The case does not support the Department's argument that its application of section 13352 is not retrospective with regard to Fox.[4]

The Department's action here is, like that at issue in *Johnson* v. *Alexis, supra,* 143 Cal.App.3d 82, a sanction imposed upon the licensee under a law which came into effect after commission of the triggering offense. "To impose the suspension sanction upon him under the later enactment is to give retroactive effect to the statute." (143 Cal.App.3d 82, 85.)

### III

■ In the event its action is determined to involve retroactive application of the new statutes, the Department argues its practice is consistent with the intent of the Legislature. The Department acknowledges that legislative enactments are generally presumed to operate prospectively and *not* retroactively unless the Legislature expresses a different intention. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371]; *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167 [18 Cal.Rptr. 369, 367 P.2d 865].) The Department relies on the language of section 45 of chapter 940 of the Statutes of 1981 to demonstrate that the Legislature intended amended sections 13352 and 13352.5 to govern sus-

---

[4]*Murrill* is more pertinent to the Department's argument that retroactive application of the statutes does not abridge Fox's constitutional rights of due process and against ex post facto application of a penal statute.

This court has held that in modern society the right to retain a driver's license is a fundamental vested right such that administrative action revoking it is subject to full and independent judicial review. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392 [188 Cal.Rptr. 891, 657 P.2d 383].) But we have declined to elevate the right to the level of a fundamental constitutional one which requires application of the "strict scrutiny" standard to review of the substantive validity of regulatory legislative measures. (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 83 [177 Cal.Rptr. 566, 634 P.2d 917].) Nor, in spite of the close relationship which criminal sanctions for DUI bear to license revocation under the current statutory scheme, have we determined that license revocation is a penal sanction subject to the constitutional prohibition against ex post facto application of the law.

Because we determine that the statutory scheme here was not intended to apply retroactively to petitioner, we do not confront the constitutional issues at this time.

pension of licenses due to offenses which occurred prior to the date the statutes became law.

Section 45 of the Statutes of 1981, chapter 940 provides in relevant part:

"(a) The provisions of Sections 2, 6, 7, and 10 of the Vehicle Code expressly apply to the provisions of this act, and, further for any recidivist or enhancement purposes, reference to an offense by section number is a reference to the provisions contained in that section, insofar as they are renumbered without substantive change, and those provisions shall be construed as restatements and continuations thereof and not as new enactments.

"(b) Any reference to the provisions of the Vehicle Code to a prior offense of Section 23152 shall include a prior offense under Section 23102 or 23105, as those sections read prior to January 1, 1982.

". . . . . . . . . . . . . . . . . . . . .

"(d) The provisions of this section are declaratory of existing law."[5]

The Department urges that newly enacted sections 23152 and 23170 must, pursuant to section 45 of chapter 940 of the Statutes of 1981, be regarded as continuations of the provisions of former section 23102. Thus even though petitioner was convicted and punished under former section 23102, his license must be revoked under the substantially unchanged provisions of existing section 23170. Although it acknowledges that the 1981 amendments removed participation in an approved alcohol rehabilitation program as an alternative to license suspension for third offenders, the Department reasons that "[t]he 1981 amendments . . . merely altered the suspension provisions in form, not substance, with the exception that the period of counting offenses was reduced from seven years to five years. . . ."

The Department's argument is factually inaccurate. New section 23152 et seq. are not substantially the same as former section 23102. The new statutes redefine the offense of driving while intoxicated. (See *Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 264 [198 Cal.Rptr. 145, 673 P.2d 732]; cert. den. (1984) 466 U.S. 967 [80 L.Ed.2d 812, 104 S.Ct. 2337].) They provide for increased criminal penalties in the form of more lengthy mandatory jail sentences (compare § 23160 with former § 23102, subd. (c);

---

[5]Sections 2, 6, 7 and 10 state rules of construction applicable to the provisions of the Vehicle Code. Section 2 is particularly pertinent: "The provisions of this code, insofar as they are substantially the same as existing provisions relating to the same subject matter, shall be construed as restatements and continuations thereof and not as new enactments."

§ 23165 with former § 23102, subd. (d)), higher fines (*id.*) and more restrictive mandatory conditions of probation (see new § 23161; compare § 23166 with former § 23102, subd. (e); see new § 23171) as well as mandatory license revocation without the alternative of alcoholism rehabilitation for third offenders (compare §§ 13352, subd. (a)(5) and 13352.5, subds. (a) & (b) with former §§ 13352, subd. (e), and 13352.5, subd. (a); see §§ 23171, subd. (b) and 23176, subd. (b)).

In fact, the Department by its own argument admits that sections 13352.5, 23152 and 23170 contain substantive changes from the prior statutes insofar as the new sections remove the rehabilitative alternative.

Provisions containing substantive changes are not declared to be "restatements and continuations" of prior law by section 45, subdivision (a) of chapter 940 of the Statutes of 1981. If they are to be applied retroactively, we must therefore find some other indicia that the Legislature intended to depart from the normal rule of prospectivity.

A wide variety of factors may be relevant to our effort to determine whether the Legislature intended a new statute to be given retroactive effect. The context of the legislation, its objective, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction may all indicate the legislative purpose. (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 587.) An express declaration that the Legislature intended the law to be applied retroactively is not necessarily required. (*In re Estrada* (1965) 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948].)

The most significant factors in this case are found in the language and organization of the new statutes themselves. Section 13352, subdivision (a)(5), for example, directs revocation of the license of a person convicted "of a violation of section 23152 punishable under section 23170. . . ." Both references are to sections of the code newly enacted by the Statutes of 1981. Although section 45, subdivision (a) of chapter 940 of the Statutes of 1981 directs the new sections be regarded as continuations of former section 23102 "insofar as they are renumbered without substantive change," we have already seen that substantive changes have been made in the civil and criminal penalties for repeat offenses. Thus, petitioner who was convicted of violating section 23102 and is punishable under that section rather than section 23170 does not fall within the terms of amended section 13352, subdivision (a)(5).

Section 45, subdivision (b) of chapter 940 of the Statutes of 1981, which makes any reference to a prior offense of section 23152 inclusive of prior

offenses under sections 23102 or 23105, is also inapplicable to petitioner. This section serves only to ensure that repeat offenders will not be given a "clean slate" by the repeal of former sections 23102 and 23105 and their reenactment in new section 23152.

The ex post facto clauses of the state and federal Constitutions clearly prohibit retroactive application of the increased criminal sanctions of section 23152 et seq. to offenders like petitioner. (U.S. Const., art. I, § 9, cl. 3; Cal. Const., art. I, § 9; see *Weaver* v. *Graham* (1981) 450 U.S. 24 [67 L.Ed.2d 17, 101 S.Ct. 960].) No party to this action has argued that the Legislature intended or attempted to effect such a result. As noted above (*ante,* p. 624) provision for mandatory license revocation is included in the Vehicle Code sections defining criminal sanctions for repeat offenses which were enacted as part of the new statutory scheme. (See, §§ 23165, 23170.) It seems unlikely that the Legislature intended that these sections be retroactive insofar as they pertain to license revocation but be prospective insofar as they impose criminal sanctions. The result could lead to considerable confusion in trial court and administrative proceedings. An attempt to apply mandatory revocation provisions might suggest an improper legislative infringement of the legitimate powers of the sentencing courts to set conditions of probation as authorized by the law governing imposition of criminal sanctions. (Cal. Const., art. VI, § 1.)

Finally, retroactive application of these statutes would affect only the small and finite number of offenders who, like petitioner, committed their recidivist offenses prior to the effective date of the statute but happened to be formally convicted after that date.  In the absence of a clear expression that it meant to embark upon such a difficult course in order to obtain a result which is relatively insignificant with respect to the purposes of the law, we cannot attribute to the Legislature an intent that the statutes be applied in the retrospective manner urged by the Department.

We do not in any way intend to undercut the urgency of the problem presented by persons who drive automobiles while intoxicated nor the acknowledged powers of the legislative branch to enact, pursuant to its traditionally broad police power, "any measure which reasonably relates to public health or safety" in this realm. (See *Burg* v. *Municipal Court, supra,* 35 Cal.3d 257, 266.) We stress that our holding affects only the limited group of persons, like petitioner, who committed second or subsequent offenses prior to the effective dates of the 1981 and 1982 amendments to the Vehicle Code, but who were not convicted and sentenced until after the new statutes became law. The state's interest in protecting the driving public from this limited class of recidivists is adequately served, the Legislature

apparently concluded, by applying to them criminal and civil penalties in effect at the time their offenses occurred.

The judgment is affirmed.

Bird, C. J., Mosk, J., Kaus, J., Broussard, J., and Grodin, J., concurred.

**LUCAS, J.**—I dissent. Effective January 1, 1982, the Legislature in essence mandated the Department of Motor Vehicles (DMV) to revoke the driver's license of any person previously convicted of three or more drunk driving offenses despite his participation in an alcoholism rehabilitation program. (See Veh. Code, §§ 13352, 13352.5, 23171, 23176.) The majority refuses to enforce the new law with respect to persons whose third offense occurred prior to its effective date, even though their *conviction* of that offense occurred thereafter. The majority reasons that such a result would constitute a retroactive application of the new law, that the Legislature failed to specify that it intended such a result, and that a retroactive application possibly might run afoul of constitutional ex post facto principles.

In light of the obvious menace to public safety posed by drunken drivers, it is patently clear to me that the Legislature intended its new mandatory revocation law to apply *to everyone* to the extent constitutionally permitted. What possible reason could the Legislature have had to make its new protective legislation prospective only? The provision is based on the rather elementary proposition that persons who have been repeatedly convicted of drunken driving are a serious threat to public safety and should lose their driving privileges whether or not they enroll, belatedly, in some noble rehabilitation program.

Would a retroactive application of the new law offend ex post facto principles? I think not. Certainly the Legislature is empowered to determine a driver's present fitness to drive a car, based upon his or her past driving record. Just as a state agency may revoke a professional license for misconduct occurring prior to enactment of the statute authorizing revocation (*Murrill* v. *State Board of Accountancy* (1950) 97 Cal.App.2d 709, 711 [218 P.2d 569]), so too may the Legislature "retroactively" determine that a driver with a substantial history of drunk driving episodes should be denied further driving privileges. No forbidden ex post facto law is involved here, especially since the third or "triggering" conviction was entered after the new law went into effect.

Moreover, as Presiding Justice Puglia stated in his opinion written for the Court of Appeal in this case, "It is well established . . . that statutes which provide for the suspension or revocation of licenses, are not penal statutes

subject to ex post facto prohibition, even though they may require the consideration of past offenses. Such statutes are intended to protect the public rather than to punish licensees. (*Foster* v. *Police Commissioners* (1894) 102 Cal. 483, 490-491 [37 P. 763]; *Furnish* v. *Board of Medical Examiners* (1957) 149 Cal.App.2d 326, 330-331 [308 P.2d 924]; *Murrill* v. *State Board of Accountancy* [*supra*] 97 Cal.App.2d 709, 711-712; *Ellis* v. *Dept. of Motor Vehicles* (1942) 51 Cal.App.2d 753, 758-759 [125 P.2d 521]; *Beamon* v. *Dept. of Motor Vehicles* (1960) 180 Cal.App.2d 200, 210 [4 Cal.Rptr. 396].)"

I would reverse the judgment and remand with directions to enter judgment for the DMV.