[No. A130542. First Dist., Div. Three. Sept. 21, 2012.]

DOMINIQUE NIKI MATTEO, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

## Counsel

Kamala D. Harris, Attorney General, Alicia Fowler, Assistant Attorney General, Fiel D. Tigno, Jennifer G. Perkell and David Pai, Deputy Attorneys General, for Defendant and Appellant.

Mitchell, Hedin, Breiner, Ehlenbach & Burglin and Paul Burglin for Plaintiff and Respondent.

Chad R. Maddox for Gregory Lee Roach et al., as Amici Curiae on behalf of Plaintiff and Respondent.

Law Office of Barry T. Simons and Marlo Cordero as Amicus Curiae on behalf of Plaintiff and Respondent.

## Opinion

**JENKINS, J.**—This is an appeal from a trial court order directing petitioner Department of Motor Vehicles (DMV) to grant respondent Dominique Niki Matteo (Matteo) a restricted driver's license based upon his compliance with Vehicle Code section 13352, subdivision (a)(3), as amended effective July 1, 2010, a date occurring after Matteo's commission of a drunk driving offense but before his conviction for the offense.[1] The DMV contends the order was based on an illegal retroactive application of section 13352, subdivision (a)(3), requiring reversal. We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Matteo has thrice been convicted of driving under the influence (DUI) pursuant to section 23152, subdivision (a)—on December 24, 1990, December 13, 2007, and July 15, 2010. The July 15, 2010 conviction stemmed from an offense committed by Matteo on February 23, 2010, involving a multiple-point collision. Because this was Matteo's second DUI offense in 10 years, he

---

[1] Unless otherwise stated, all statutory citations herein are to the Vehicle Code.

was deemed a second-time offender subject to certain legal requirements, including a one-year license suspension under section 13353.2.

After the DMV suspended his license for one year pursuant to section 13353.2, Matteo requested an administrative per se (APS) hearing, which was held June 9, 2010. On June 15, 2010, Matteo entered a nolo contendere plea in court. A few weeks later, on July 8, 2010, the DMV mailed to Matteo its written decision upholding the administrative suspension effective as of the June 9, 2010 hearing date.[2] On July 15, 2010, pursuant to Matteo's plea, the trial court, among other things, ordered him to install an ignition interlock device (IID) in his vehicle for at least one year.

The trial court's order to convict Matteo was entered shortly after the July 1, 2010 effective date of the amendment to section 13352, subdivision (a)(3), the statutory provision at the center of this dispute. Under this amendment, second-time DUI offenders (alcohol only) could apply to the DMV for a restricted license after only 90 days of suspension if they accomplished each of the following: (1) enrolled in an 18-month DUI program; (2) provided proof of financial responsibility in the form of an SR-22 certificate of insurance; and (3) provided proof of installment of an IID in his or her vehicle.[3]

In this case, Matteo appears to have met these requirements. As such, on September 7, 2010, after serving a 90-day suspension, Matteo applied in

---

[2] As the DMV explains: "Since it can be years before a [DUI] conviction is actually entered, the [DMV's] responsibility to enforce APS suspensions in order to protect the public safety is a separate responsibility from the enforcement of the statutes restricting driver privileges upon conviction."

[3] Section 13352, subdivision (a)(3) provides:

"(a) The department shall immediately suspend or revoke the privilege of a person to operate a motor vehicle upon the receipt of an abstract of the record of a court showing that the person has been convicted of a violation of Section 23152 or 23153, subdivision (a) of Section 23109, or Section 23109.1, or upon the receipt of a report of a judge of the juvenile court, a juvenile traffic hearing officer, or a referee of a juvenile court showing that the person has been found to have committed a violation of Section 23152 or 23153 or subdivision (a) of Section 23109 or Section 23109.1. If an offense specified in this section occurs in a vehicle defined in Section 15210, the suspension or revocation specified below shall apply to the noncommercial driving privilege. The commercial driving privilege shall be disqualified as specified in Sections 15300 to 15302, inclusive. For the purposes of this section, suspension or revocation shall be as follows: [¶] . . . [¶]

"(3) Except as provided in Section 13352.5, upon a conviction or finding of a violation of Section 23152 punishable under Section 23540, the privilege shall be suspended for two years. The privilege shall not be reinstated until the person gives proof of financial responsibility and gives proof satisfactory to the department of successful completion of a driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code as described in subdivision (b) of Section 23542. For the purposes of this paragraph, enrollment in, participation in, and completion of an approved program shall be subsequent to the date of the current violation. Credit shall not be given to any program activities completed prior to the

person at a DMV field office for an IID-restricted license.[4] However, Matteo was told by a DMV official he was ineligible for such license until at least June 8, 2011, because the version of section 13352, subdivision (a)(3) in effect on February 23, 2010, the date he committed the relevant DUI offense, required a one-year suspension. This action by the DMV official was, in turn, consistent with the DMV's statewide policy to apply the amended version of section 13352, subdivision (a)(3) only to drivers committing a DUI offense after the amendment's July 1, 2010 effective date.

On September 13, 2010, Matteo filed a petition for writ of mandamus (writ petition) in superior court challenging the DMV's refusal to grant him an IID-restricted license. The same day, the trial court issued an alternative writ of mandate, order to show cause. On October 28, 2010, following a contested hearing, the trial court granted Matteo's writ petition and ordered the DMV to grant Matteo the restricted license. The trial court reasoned that under *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] and *People v. Durbin* (1966) 64 Cal.2d 474 [50 Cal.Rptr. 657, 413 P.2d 433], Matteo was entitled to the benefit of a statutory decrease in punishment in effect at the time of his conviction. In addition, the court found that the legislative history

date of the current violation. The department shall advise the person that he or she may apply to the department for a restriction of the driving privilege, which may include credit for a suspension period served under subdivision (c) of Section 13353.3, subject to the following conditions:

"(A) Completion of 12 months of the suspension period, or completion of 90 days of the suspension period if the underlying conviction did not include the use of drugs as defined in Section 312 and the person was found to be only under the influence of an alcoholic beverage at the time of the violation.

"(B) The person satisfactorily provides, subsequent to the violation date of the current underlying conviction, either of the following:

"(i) Proof of enrollment in an 18-month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code.

"(ii) Proof of enrollment in a 30-month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, if available in the county of the person's residence or employment.

"(C) The person agrees, as a condition of the restriction, to continue satisfactory participation in the program described in subparagraph (B).

"(D) The person submits the 'Verification of Installation' form described in paragraph (2) of subdivision (g) of Section 13386.

"(E) The person agrees to maintain the ignition interlock device as required under subdivision (g) of Section 23575.

"(F) The person provides proof of financial responsibility, as defined in Section 16430.

"(G) The person pays all reissue fees and any restriction fee required by the department.

"(H) The person pays to the department a fee sufficient to cover the costs of administration of this paragraph, as determined by the department.

"(I) The restriction shall remain in effect for the period required in subdivision (f) of Section 23575."

[4] Section 13352, subdivision (a)(3) includes a provision allowing credit for suspension time served under an APS action arising out of the same incident. (§ 13352, subd. (a)(3).)

of the amended version of section 13352, subdivision (a)(3) reflects a clear intent that the statute apply broadly to "as many persons as constitutionally permissible." This timely appeal followed.

## DISCUSSION

The DMV contends the trial court's order, which requires it to apply the amended version of section 13352, subdivision (a)(3) in the case of Matteo, violates a long-standing rule requiring prospective application of newly enacted statutes in the absence of clear contrary legislative intent.

### I. *Mootness.*

On our own motion, we requested supplemental briefing from the parties on the preliminary issue of whether this appeal should be dismissed as moot. " 'When no effective relief can be granted, an appeal is moot and will be dismissed.' [Citation.]" (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214 [130 Cal.Rptr.2d 564].) Here, the parties disagree on whether this appeal has become moot with respect to Matteo personally, but nonetheless agree that the issue raised herein is of continuing and significant public concern such that dismissal is unwarranted. Specifically, with respect to Matteo personally, while he correctly points out that he has been granted the right to operate his IID-equipped vehicle with a restricted license, the DMV contends that, should the agency prevail on appeal, it will revoke his restricted license and reinstate the remaining period of his license suspension. With respect to the broader public, both parties note that the DMV adheres to a general statewide policy in the context of administrative licensing proceedings under which statutory amendments are applied only to persons who commit the relevant driving offense after the amendment's effective date. The amendment of section 13352, subdivision (a)(3) is just one example of statutory amendments to which this standard DMV policy applies. As such, the parties argue there is an increased likelihood that the same, or at least a comparable, statutory interpretation issue will be raised in future appeals.[5]

"Even if a case is technically moot, the appellate court may nonetheless exercise its discretion to decide the case. Such an exercise of discretion may occur where the case 'poses an issue of broad public interest that is likely to recur.' [Citations.] This exception has been invoked in many instances in order to decide a case of continuing public interest. (See, e.g., *Johnson v.*

---

[5] For example, according to its supplemental brief, the "DMV expects to adopt this same policy in connection with the January 1, 2012 amendment to Vehicle Code section 13353.3, which provides that certain persons convicted of alcohol-related reckless driving are eligible for a restricted license after serving only 90 days of their license suspension."

*Hamilton* (1975) 15 Cal.3d 461, 465 [125 Cal.Rptr. 129, 541 P.2d 881] [observing that it has been 'frequently held that a case is not mooted from the fact alone that the issue in the case is of no further immediate interest to the person raising it'] . . . .) And the public interest exception has been applied in the context of a mandamus proceeding. (*Baluyut v. Superior Court* (1996) 12 Cal.4th 826, 829–830, fn. 4 [50 Cal.Rptr.2d 101, 911 P.2d 1].)" (*Bullis Charter School v. Los Altos School Dist.* (2011) 200 Cal.App.4th 1022, 1033–1034 [134 Cal.Rptr.3d 133], citation omitted.)

We find the mootness issue in this case to be a close call, given the relatively small number of people likely to remain impacted by the DMV's refusal to apply the amended version of section 13352, subdivision (a)(3) to drivers committing their offenses before the statute's July 1, 2010 effective date. Nonetheless, for the reasons identified by the parties—and, in particular, the likelihood that similar Vehicle Code amendments will, based upon the above identified DMV policy, be applied only to drivers committing offenses after the amendments' effective dates—we conclude there is sufficient ongoing public interest in the outcome to warrant our consideration of this appeal. (*Bullis Charter School v. Los Altos School Dist., supra*, 200 Cal.App.4th at pp. 1034–1035 [invoking the public interest exception to decide a case involving a charter school's facilities request for a since passed school year after concluding "[i]ssues concerning the manner in which school district facilities are allocated to charter schools under Proposition 39 are . . . of broad interest . . ." to hundreds of other charter schools, as well as their school districts].) As such, we proceed to the merits.

## II. *Standard of Review.*

The parties agree this action is one of traditional mandamus arising under Code of Civil Procedure section 1085. In such actions, the standard of review can be quite deferential where, for example, the agency is acting as a quasi-legislative body in adopting a regulation in accordance with a legislative delegation of authority. However, where, as in this traditional mandamus action, the agency is simply interpreting a controlling statute, the standard of review is much less deferential. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8, 10–12 [78 Cal.Rptr.2d 1, 960 P.2d 1031] (*Yamaha*); see *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 575–576 [38 Cal.Rptr.2d 139, 888 P.2d 1268].) Under these circumstances, we independently judge the text of the statute while "taking into account and respecting the agency's interpretation of its meaning." (*Yamaha*, at p. 7.) As the California Supreme Court explains: "Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context[ (i.e., whether the agency's interpretation is embodied in a formal rule or less

formal representation)], it may be helpful, enlightening, even convincing. It may sometimes be of little worth." (*Yamaha, supra*, 19 Cal.4th at pp. 7–8.)

Here, as Matteo points out, the DMV's interpretation of section 13352, subdivision (a)(3) is not a product of formal agency decisionmaking in accordance with the Administrative Procedure Act (Gov. Code, § 11340 et seq.); rather, it appears to be a policy position adopted by the agency under more informal circumstances. As such, we find the DMV's interpretation of section 13352, subdivision (a)(3) to be of limited significance, and rely primarily on our own independent judgment. (See *Yamaha, supra*, 19 Cal.4th at pp. 12–13.)

III. *Retroactive or Prospective Operation of Section 13352,*
     *subdivision (a)(3).*

The DMV relies on *Fox v. Alexis* (1985) 38 Cal.3d 621, 624 [214 Cal.Rptr. 132, 699 P.2d 309] to argue the amended version of section 13352, subdivision (a)(3) does not apply to persons convicted of alcohol-only DUI's after the statute's July 1, 2010 effective date if they committed the offense before July 1, 2010. In *Fox v. Alexis*, the DMV revoked the defendant's license for three years pursuant to statutes that became effective after the defendant committed the underlying DUI offense. (*Fox*, at p. 623.) The California Supreme Court concluded the DMV's action was illegal because there was no clear legislative intent to depart from the well-established presumption that statutes apply prospectively. (*Id.* at p. 627, citing *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371] [statutes apply prospectively in the absence of a clearly expressed contrary intent].) According to the court, to "apply the[] new statutes to conduct which occurred prior to their effective enactment is 'to apply the new law of today to the conduct of yesterday,' a basic form of retroactive application of the statute. [Citation.]" (*Fox v. Alexis, supra*, 38 Cal.3d at p. 626.)

Matteo counters, and the trial court agreed, that *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] (*Estrada*) and *People v. Durbin* (1966) 64 Cal.2d 474 [50 Cal.Rptr. 657, 413 P.2d 433] govern this case rather than *Fox v. Alexis*. In *Estrada*, the California Supreme Court held that, while generally the governing law is the one in effect when a defendant commits his or her criminal act, there is a special exception where an amendment is made to the law that represents a "legislative mitigation of the penalty" for the criminal act. In such cases, the amendatory statute should be applied retroactively. (*Estrada, supra*, 63 Cal.2d at p. 745; see *People v. Vieira* (2005) 35 Cal.4th 264, 305 [25 Cal.Rptr.3d 337, 106 P.3d 990] ["a defendant generally is entitled to benefit from amendments that become effective while

his case is on appeal"].) In *People v. Durbin*, the court applied the *Estrada* rule to legislative mitigation of civil penalties and forfeitures. (*People v. Durbin, supra*, 64 Cal.2d at pp. 479–480.) According to Matteo, the amended version of section 13352, subdivision (a)(3) represents a legislative decision to mitigate the penalty for driving under the influence of alcohol and thus, under these cases, must be applied retroactively to persons, like him, who commit the offense before the statute's effective date. Matteo further argues that the clear legislative intent in enacting the amended statute was to apply it broadly to persons, like him, who committed an offense before the statute's effective date in order to promote the important goals of proactively fighting drunk driving and reducing the incidence of driving on a suspended license.

Amici curiae endorse Matteo's arguments, while also raising an alternative argument.[6] Specifically, amici curiae contend that, putting aside the presumption that new statutes apply prospectively absent clear contrary legislative intent, applying the amended version of section 13352, subdivision (a)(3) to persons arrested, but not yet convicted, for alcohol-only DUI's as of July 1, 2010, is not in fact applying the statute retroactively because it does not "change the legal consequences of past conduct by imposing new or different liabilities based upon such conduct. [Citation.]" (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 232 [46 Cal.Rptr.3d 57, 138 P.3d 207].) We asked for supplemental briefing on this issue, which both parties submitted. Having considered all the relevant briefing, we conclude this alternative argument has merit.

■ As the California Supreme Court has explained, "the presumption of prospective operation is classically intended to protect . . . the right to have liability-creating conduct evaluated under the liability rules in effect at the time the conduct occurred." (*Californians for Disability Rights v. Mervyn's, LLC, supra*, 39 Cal.4th at p. 233.) Thus, a statute only has retrospective effect "when it substantially changes the legal consequences of past events. [Citation.] A statute does not operate retrospectively simply because its application depends on facts or conditions existing before its enactment. [Citation.]" (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507].) " 'In deciding whether the application of a law is prospective or retroactive, we look to function, not form. [Citations.] . . . Does the law "change[] the legal consequences of past conduct by imposing new or different liabilities based upon such conduct[?]" [Citation.] Does it "substantially affect[] existing rights and obligations[?]" [Citation.] If so, then application to a trial of preenactment conduct is forbidden, absent an express legislative intent to permit such retroactive application. If not, then application to a trial of preenactment conduct is permitted, because the

---

[6] On January 24, 2012, we granted the separate applications of Gregory Lee Roach et al., and Marlo Cordero for permission to file amici curiae briefs in support of respondent.

application is prospective.' [Citation.]" (*Californians for Disability Rights v. Mervyn's, LLC, supra*, 39 Cal.4th at pp. 230–231; see *Strauss v. Horton* (2009) 46 Cal.4th 364 [93 Cal.Rptr.3d 591, 207 P.3d 48] [a "retroactive" statute is one that takes away or impairs a vested right, imposes a new obligation or duty or attaches a new liability with respect to past conduct or transactions].)

Applying these rules to our case, we first return to *Fox v. Alexis*, the case relied upon by the DMV to argue against application of the amended statute. There, the California Supreme Court held that the DMV illegally revoked a DUI offender's license based on statutes enacted after commission of the offense. Labeling the DMV's action "a sanction," the court explained that " 'impos[ing] the suspension sanction upon [the defendant] under the later enactment is to give retroactive effect to the statute.' " (*Fox v. Alexis, supra*, 38 Cal.3d at p. 627.) In other words, application of the new statutes to the defendant was impermissibly retroactive because it imposed upon him a liability—to wit, a three-year license revocation—that did not exist when he committed the underlying offense.

■ Here, to the contrary, under the newly amended section 13352, subdivision (a)(3), the DMV was required to inform Matteo of his right to apply for a restricted license based upon his compliance with the statute's new procedural requirements. Granting Matteo the right, if he so chooses, to apply for a restricted license after meeting certain preconditions clearly is not a sanction. Nor does it change the legal consequences of Matteo's past conduct by imposing new or different liabilities based upon such conduct or substantially affect his existing rights and obligations. In fact, the statute does not change the underlying punishment for second-time DUI offenders. Before and after Matteo's February 2010 offense, he, like other second-time DUI offenders (alcohol only), faces a two-year license suspension. (§ 13352, subd. (a)(3).) The change—permitting Matteo and other similarly situated DUI offenders to apply for the new restricted license after a 90-day suspension and proof of compliance with certain conditions rather than after a 12-month suspension—is more aptly described as a change in the rules for administering license suspensions rather than imposition of new or different liabilities for committing the underlying criminal conduct. Thus, because "[n]othing a [person] might lawfully do before [the amendment] is unlawful now, and nothing earlier forbidden is now permitted," we conclude application of section 13352, subdivision (a)(3) must be deemed prospective rather than retroactive. (*Californians for Disability Rights v. Mervyn's, LLC, supra*, 39 Cal.4th at p. 232 ["Viewed functionally, a statute that establishes rules for the conduct of pending litigation without changing the legal consequences of past conduct ' " 'is not made retroactive merely because it draws upon facts

existing prior to its enactment . . . .' " ' "]; see *River Garden Retirement Home v. Franchise Tax Bd.* (2010) 186 Cal.App.4th 922, 957 [113 Cal.Rptr.3d 62].)[7]

Accordingly, because there has been no imposition of a new or different liability with respect to Matteo's commission of a second DUI alcohol-only offense, we reject the DMV's claim that applying the newly enacted section 13352, subdivision (a)(3) to Matteo was impermissibly retroactive. The trial court order thus stands.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Matteo.

Pollak, Acting P. J., and Siggins, J., concurred.

---

[7] We reject the DMV's attempt to distinguish *Californians for Disability Rights v. Mervyn's, LLC*, on the ground that, in that case, the court was asked to consider whether a statutory amendment creating new standing rules applies to cases pending at the time of the amendment's enactment. Here, in contrast, we are asked to consider whether a statutory amendment to driving license-suspension rules applies to persons who commit driving offenses before the amendment's enactment. In that case, as in this case, the issue is whether a statutory amendment changes the legal consequences of conduct engaged in before the amendment's effective date. (See *Californians for Disability Rights v. Mervyn's, LLC, supra*, 39 Cal.4th at pp. 230–231 [" 'In deciding whether the application of a law is prospective or retroactive, we . . . [citations] consider the effect of a law on a party's rights and liabilities . . . .' "].)